## Case No. 3,218.

### CORBET et al. v. JOHNSON et al.

[1 Brock. 77.][1]

Circuit Court, D. Virginia. May Term, 1805.

COLLECTION OF DEBT OF DECEDENT.

At law, a bond creditor has his election to proceed either against the heir or executor, but if he comes into equity, and proceeds against the heir or devisee, he must join the executor in the suit, and he must exhaust the personal estate of the debtor in the hands of his legal personal representative, before the lands will be subjected. But if the personal fund has passed into other hands than those of such legal personal representative, he is not bound to pursue it further, and the court will proceed to decree directly against the land. Therefore, when a bond debtor died, having appointed two executors, both of whom qualified, and one of them died, having a portion of his testator's estate in his hands, and his co-executor afterwards died, whose executor became the executor of the first testator, and a bill in equity was filed by the bond creditors, against the heirs and devisees, and the executor of the surviving executor of the debtor, the court refused to compel the plaintiffs to join the representative of the executor who first died, in the suit (although that executor was responsible for a portion of the personal estate of the bond debtor), and decreed a sale of the land derived from him; it appearing, that the personal assets in the hands of the legal personal representative were exhausted.

[Explained and followed in Murdock v. Hunter, Case No. 9,941. Cited in McLaughlin v. Bank of Potomac, 7 How. (48 U. S.) 231; Hefner v. Northwestern Mut. Life Ins. Co., 123 U. S. 747, 8 Sup. Ct. 341.]

The bill in this case was filed by Cunningham Corbet and others, assignees of Ninian Minzies, against the heirs and devisees of Edward Johnson, deceased, and also against William Wiseham, executor of Andrew Ronald, who was the surviving executor of Edward Johnson, to compel the payment of two bonds, executed by the said Johnson, in his life time, to Minzies, which bonds were assigned by Minzies to the plaintiffs, for the benefit of his creditors. Edward Johnson, by his will, appointed William Ronald and Andrew Ronald his executors. Both of the executors appointed by the will of Edward Johnson qualified and acted as such. The report of the commissioner appointed to settle the administration account of Andrew and William Ronald, showed a balance due by William Ronald to the estate of his testator of £3179 1s. 4d., and that the estate of Edward Johnson owed the estate of Andrew Ronald £64 15s. 10d. William Ronald died intestate, before his co-executor, and

afterwards Andrew Ronald also died, having appointed the defendant Wiseham his executor, who, as such, was the executor of Edward Johnson. Both William and Andrew Ronald were dead before the institution of this suit, and the representatives of William Ronald were not made parties thereto. The heirs and devisees of Edward Johnson, who were also his children, in their joint answer, referred to the copy of the bond of the co-executors of Edward Johnson, and to the report of a commissioner on their administration account, showing that a balance more than sufficient for the discharge of the plaintiff's debt was due from them to Edward Johnson's estate, and insisted that the plaintiff's debt, which was of the first dignity, should be satisfied out of the personal estate of their ancestor, and to this end that the personal representatives of William Ronald, and the sureties in the executorial bond, should be made parties defendants, and be subjected to the payment of this debt, claiming exemption for the real estate derived from Edward Johnson, until recourse was had to his personal estate into whatever hands it had passed. On the question raised in the answer, as to the proper parties to this bill, the following opinion of the court was delivered by

Before MARSHALL, Circuit Justice, and GRIFFIN, District Judge.

MARSHALL, Circuit Justice. The material question in this case is, how far a bond creditor, coming into a court of equity to subject lands to his debt, will be compelled to pursue the personal estate, before the lands shall be applied to the satisfaction of his claim. At law, he has his option to resort to either fund. Originally, it appears to have been deemed necessary first to exhaust the personal estate; but from the time of Edward IV., it has been held, that the creditor may elect to sue either the heir or the executor. The cases on this subject are reviewed by Powell;[2] and since that period, it has been uniformly decided, that "assets in the hands of the executor at the time the writ was sued out" is no plea in bar to an action of debt against the heir. But although the creditor has this election, if he chooses to proceed at law, yet if he comes into a court of equity, he must conform to its rules. One of these is, that the executor shall be joined in the suit. For this rule, two reasons are assigned:—1st. That he may contest the claim. 2dly. That the personal fund out of which a reimbursement would be decreed to the heir, may be applied in the first instance to the payment of the debt. That the legal, personal representative of the first testator must, therefore, be joined in a suit brought on the chancery side in this court by a creditor against the heirs, seems to be universally conceded. So far as the ques-

---

[2] 2 Pow. Mortg. 777, 778, and Mr. Coventry's note E.

tion, whether the personal estate must be pursued into other hands than those of the legal representative, depends upon principle, it is urged that one of the reasons on which the rule was adopted, applies with equal force to its extension so far as to require that the personal fund should be exhausted before recourse is had to the real.

In a court of equity the effects of the testator may be pursued into the hands of every person whatever; and all those who hold any portion of his estate may be brought before the court in the same suit. If the executor must be brought into court because, among other reasons, he would be responsible to the heir, so any person possessing the personal fund, who would be responsible to the heir, and who can be brought into court, ought, for the same reason, to be associated with him in the suit. It is equitable and convenient, that the person who must ultimately pay the debt, should be decreed to pay it in the first instance.

For the plaintiff, it is contended that the creditor, having a legal right to pursue the heir, equity will respect that right, and will only impose upon him, when he comes into this court, such conditions as are reasonable, and as will not injure his rights.

The legal representative may be brought before the court without much delay or inconvenience; but if the plaintiff is compelled to go beyond the legal representative, if the various, intricate, and multiplied questions which must be settled in determining by whom and in what proportions the debt is ultimately to be paid, are all to be discussed before he receives a debt acknowledged to be due, and to pay which adequate funds are acknowledged to be in the hands of the debtors, he will experience delays which are incalculable; and thus the rule of equity will work a real wrong to a person possessing a plain title both in law and equity.

These arguments on both sides are entitled to great respect, and a course of decisions, the one way or the other, might be defended by reasons perfectly satisfactory. In whichever way the principle may have been settled, there are no inducements for shaking the decisions which have been made. The case from 3 Atk. (Madox v. Jackson, page 400) lays down the general rule as it has been stated. But that case contemplates the general rule under its usual circumstances only, not when it comes in conflict with other principles which are also regarded. Lord Hardwicke contemplated merely the legal, personal representative of the deceased, and the case of both an heir and executor legally accountable to the creditor. The personal fund, under such circumstances, must be first exhausted. But what the opinion of Lord Hardwicke would have been when the personal fund was not in the hands of the legal, personal representative, cannot be asserted from the case from At-

kyns. The case cited from 3 P. Wms. (Knight v. Knight, pages 331–334, and note A) is of the same character with that from 3 Atk. It lays down the general principle, so far as respects the heir and executor. The reason given for the principle would certainly favour strongly the argument on the part of the heirs. A court of equity, said the chancellor, delights to do complete justice, and not by halves; as; first to decree against the heir, and then to put the heir upon another bill against the executor to reimburse himself out of the personal assets. Where the executor and heir are both brought before the court, complete justice may be done by decreeing against the executor, so far as the personal assets extend; the rest to be made good by the heir out of the real assets. These expressions are, it is true, precisely applicable to the case at bar. But the counsel who produced this case has very correctly observed, that general principles declared in a particular case, must be taken with some reference to the case in which they are declared. The mind of the judge is fixed upon the circumstances of the case before him, and the abstract principles he lays down, must receive some limitation from these circumstances. The words of the chancellor, which follow those which have been quoted, seem to give this argument a peculiar application to the case from Peere Williams. "And here," says Lord Talbot, "appears no difficulty or inconvenience in bringing the executor before the court." This observation seems to warrant the opinion, that Lord Talbot would have allowed weight to arguments drawn from the difficulty or inconvenience of pursuing the personal fund.

The principles laid down in the books of practice respecting the necessary parties to a bill, are drawn from particular decisions which are referred to. It is laid down in those books, that all persons materially interested in the subject of a suit, ought to be parties to it; and an instance put in illustration of this rule, is that of a bill against the heir alone, where the personal estate is first liable for the demand. The case from 3 Peere Williams is referred to as authority for this rule, and that case relates to the legal representative.

But how are the real or personal estate of William Ronald interested in the subject of this suit? They are neither concerned in the demand, or interested in the relief prayed. Their responsibility can neither be increased nor diminished by any decree which is rendered in it. In the common case of the heir and executor, the claim of the heir on the personal estate may depend on the establishment of the claim against the real estate. In such a case as this, the representatives of William Ronald owe a certain sum for which they are liable, whether this claim be established or not. Upon the ground of interest, then, there can be no

necessity for making them parties; it is only on the principle that they must ultimately account to the heir; and, therefore, ought to be brought, in the first instance, before the court. This restores the original question, how far and into what hands the creditor is obliged to pursue the personal estate.

It appears to have been frequently decided, that he must exhaust it in the hands of the legal, personal representative; but never, that he is compelled to pursue it into the hands of others. Yet in the infinite variety of situations into which personal assets are thrown, it is scarcely conceivable that cases have not occurred where the heir was sued, and the personal estate was not exhausted in a legal course of administration, though nothing should remain in the hands of its legal representative. The reasoning, however, for extending the principles laid down respecting the personal fund, to the case of its being found in the hands of a person who may be considered as the equitable, though not the legal representative, is very strong; and the court would have been relieved by finding, that authorities relied on against so extending it, were decisive.

The case from Equity Cases Abridged,[3] which is reported in Viner, is an express case of a decree against lands in the first instance, leaving the heir to pursue the personal estate. It is said that the decree being given without its circumstances, it must be supposed that the personal estate was absolutely exhausted. This may have been the fact, but, certainly, it cannot be assumed as a fact. If the presumption was absolutely necessary to account for the decree, it would be made; but to pronounce it absolutely necessary, presupposes what is to be proved,—that the law is with the defendants. But this case was decided twenty years before that reported by Peere Williams, and four years before that reported by Atkyns. The probability therefore is, that it was decided before the principle, that the personal estate should be first applied in case of the real, and that the creditor should not be at liberty to resort directly to the heir, leaving him to take his remedy against the executor, was firmly established. This consideration certainly deducts from the authority of that case. The case from 3 Ves. Jr. (Manning v. Spooner, page 114) is a question respecting the order in which the real fund shall be applied by a court of equity, without containing any instructions as to the necessity of pursuing the personal fund into the hands of other than those of the personal representative, before the creditor can resort to the real. The sentiment with which the case closes, relates to the absolute final rights of parties, not to the necessity of proceeding against all persons who may be made liable, or to the right of electing to confine the suit to those who are immediately liable, without joining those who may be afterwards accountable. The case from 2 Ves. Jr. (Hamilton v. Worley, page 62) is a mere question of intention in the construction of a will. In deciding that question, the chancellor says: "The court affords an equity to a person entitled to a real estate by devise, to have the incumbrances upon it discharged as a debt out of the personal estate. That can go no further than this; as between the heir or devisee, and the residuary legatee. It cannot interfere with the disposition of other parts, as specific or general legatees, much less with the interests of creditors."

The counsel for the plaintiff understands this declaration as relating to the right of the creditor to pursue one fund or the other singly, at his election. The court does not so understand it. The question there, was whether the devisee of a mortgaged estate might resort to the personal estate for its exoneration. The court declares this right to be limited to the case of a residuary legatee, and not to extend to cases of specific or general legacies, much less to the case of a creditor: that is, where the personal fund is necessary for the payment of debts. No case, then, has been cited from the English books which is an express authority for this case. It has already been suggested, that the very circumstance of there being no case in which it has been decided, that the personal fund must be pursued into other hands than those of the legal representative, is a strong argument against its being necessary. The court of equity has introduced a principle which limits the legal right of the creditor to elect the fund to which he will resort. That principle has only been carried to a certain extent, and if extending it further would impair complete and perfect rights, there is reason to believe that those courts will not extend it further. With respect to the creditor, unless it be for his advantage, the personal estate may be said to be exhausted, when there are no longer assets in the hands of the executor. Although the English authorities do not reach the case. the decision of this court in the case of Main v. Murray [Case No. 8,975] is supposed to comprehend it. On inspecting the demurrer in that case, it appears not perfectly clear, whether this question was fully before the court or not. The devisees allege themselves not to be responsible for the malversation of the executor of James Murray, the devisor. And this would seem to involve the point. Gentlemen who were concerned in it can best say how far this question was brought before the court.[4] The court, at present, inclines to consider this case as an authority,

---

[3] This is the case of Duncombe v. Hansley, reported in note A, 3 P. Wms. 333, above cited; 2 Eq. Cas. Abr. tit. "Bills," § 25, note d.

[4] In the case of Main v. Murray, in this court (Nov. term, 1799), Judge Washington presiding, the devisees demurred, and the demurrer was overruled.

but if, on a more minute investigation, it should not be so, still the court is not inclined, in a case where the controversy between those into whose hands the personal estate has passed, is so intricate, diversified and complicated, to extend the principle further than it ever has been extended, and to postpone the creditors till their disputes shall be settled.

Decree: Sale of the real estate in the hands of the heirs and devisees decreed.