# HEFNER v. NORTHWESTERN LIFE INSURANCE COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF IOWA.

Argued November 7, 8, 1887. — Decided December 19, 1887.

Multifariousness as to subjects or parties, within the jurisdiction of a court of equity, does not render a decree void, so that it can be treated as a nullity in a collateral action.

A court of equity, in a suit to foreclose a mortgage, may permit a person, to whom the land has been sold and conveyed for non-payment of taxes assessed after the date of the mortgage, to be made a party, and may determine the validity of his title.

A bill in equity by A against B and C to foreclose a mortgage from B to A alleged that C claimed some interest in the premises, the exact nature of which the plaintiff was unable to set out, and prayed for a decree of foreclosure, and that the right, title and interest of each defendant be forever barred and foreclosed, and for a sale of the premises, and for further relief. In the decree C's default was recited and confirmed, and it was adjudged that the mortgage was a lien prior and paramount to the lien of each defendant, and that the right, title and equity of redemption of each defendant be by a sale under the decree forever barred and foreclosed, and that the purchaser at such sale should take the premises by title absolute, relating back to the date of the mortgage. Under that decree the land was sold to A. *Held*, that the decree was a conclusive adjudication that C had no valid title or lien, and estopped him to set up, in defence to an action of ejectment by A, a tax title subsequent to the mortgage and prior to the suit for foreclosure.

This was an action at law, in the nature of ejectment, to recover possession of a tract of land, brought on July 5, 1883, in the Circuit Court of the United States for the Northern District of Iowa against Hefner and wife and Babcock and wife by the Northwestern Mutual Life Insurance Company, stating its title in substance as follows:

On October 31, 1876, it filed a bill on the equity side of that court against Bates, Callanan and others, to foreclose a mortgage of the same and other lands, executed to the plaintiff on August 23, 1870, by Bates, then the owner; containing the usual allegations of such a bill; also alleging that Callanan "claims some interest in and to a portion of the mortgaged premises, the exact nature of which your orator is unable to set out;" and praying that each and all of said defendants be made parties to the bill, and for a writ of subpoena against all of them, and for judgment against Bates for the sums due on the mortgage, and for "a decree of foreclosure against the premises hereinbefore described against all of the before named defendants, and that the right, title and interest of each and every of the said defendants be by decree of this court forever barred and foreclosed, and that the master in chancery of this court be authorized to make sale of said premises, or sufficient thereof to satisfy the said several sums of money, with interest thereon, and the costs of this suit, and all and singular such relief as your orator is equitably entitled to receive."

Upon that bill, a writ of subpoena was issued against and served upon all the defendants named therein, including Callanan.

On May 21, 1877, a final decree was entered in that suit, reciting a hearing of the plaintiff and of Bates, and a default of the other defendants, confirming that default, ascertaining the sums due on the mortgage, and adjudging that the mortgage "is a lien upon the mortgaged premises, prior and paramount to the lien of each and every of the said defendants;" that Bates pay those sums, with interest and costs, to the plaintiff on or before September 1, 1877; that, in default of such payment, a sale and conveyance of the mortgaged prem-

ises, or of so much thereof as might be necessary to satisfy those sums, be made by a master; "and that the right, title and equity of redemption of each and every of the defendants in this suit be, by a sale of the said mortgaged premises hereunder, forever barred and foreclosed, and the purchaser at such sale shall take the premises sold by title absolute, and such title shall relate back to the date of the execution of the mortgage to the complainant, to wit, the 23d day of August, 1870."

On October 5, 1877, pursuant to that decree, the master sold the mortgaged premises by auction for less than those sums to the plaintiff, and executed a deed thereof accordingly.

In the present action, the plaintiff further alleged that the defendants, Hefner and others, were in actual possession, claiming a right acquired from Callanan since the beginning of the suit for foreclosure, and had no right to possession against the plaintiff, and that Callanan claimed some interest in the premises under and by virtue of a pretended tax deed.

The defendants filed an answer to this action, alleging that, the land in question being subject to taxes lawfully assessed thereon for 1870 and remaining due and unpaid, the county treasurer, at a tax sale on November 15, 1871, in conformity with law, sold the land to Callanan, and, there being no redemption from the sale, executed to Callanan on December 1, 1874, a tax deed thereof, which was duly recorded two days after, and a copy of which was annexed to the answer; and that the right and title created by the tax sale and deed, and no other, was owned by Callanan at the time of the proceedings for foreclosure and of the decree therein, and had since been conveyed by him to the defendants. A demurrer to this answer was sustained, and judgment rendered for the plaintiff; and the defendants sued out this writ of error.

*Mr. C. H. Gatch* for plaintiffs in error. *Mr. William Connor* was with him on the brief.

*Mr. B. F. Kauffman* for defendant in error.

Mr. Justice GRAY, after stating the case as above reported, delivered the opinion of the court.

The question presented by the record is, whether the title now set up by the defendants under the deed executed by the county treasurer to Callanan in 1874, pursuant to a sale in 1871 for non-payment of taxes assessed in 1870, is barred by the decree rendered for the plaintiff in 1877, upon a bill in equity to foreclose a mortgage dated August 23, 1870, to which bill Callanan had been made a party, and upon which he had been defaulted.

By the statutes of Iowa, taxes upon real estate are assessed to the owner in September of each year. In real estate mortgaged, the mortgagor retains the legal title; and it is listed by and taxed to him, unless it is listed by the mortgagee. As between vendor and purchaser, the taxes become a lien on the land on the first day of November ensuing. If the owner neglects to pay them before the first day of the following February, they may be collected by distress and sale of his personal property, and also become a perpetual lien on the land against all persons except the United States and the State. The county treasurer may collect them by sale of the land, and if the owner does not redeem from that sale within three years, the treasurer executes a deed to the purchaser, which vests in him "all the title of the former owner, as well as of the State and county." Iowa Rev. Stat. 1860, §§ 710, 714, 734, 746, 756, 759, 763–784, 2217; Stats. May 27, 1861, c. 24, § 2; April 7, 1862, c. 110; Code of 1873, §§ 796, 803, 823, 839, 853, 857, 865, 871–897, 1938.

The effect of these statutes, as declared by the Supreme Court of the State, is, that from the time of the assessment of the taxes, the State or the county has a lien on the land for the amount thereof; that upon the sale of the land for non-payment of the taxes, that lien passes to the purchaser, but the title, subject to the lien, remains in the former owner until the execution of the tax deed; and that if that deed is for any reason invalid, the lien is the only interest that the purchaser has in the land. *Williams* v. *Heath*, 22 Iowa, 519; *Eldridge* v. *Kuehl*, 27 Iowa, 160; *Everett* v. *Beebe*, 37 Iowa, 452; *Sexton* v. *Henderson*, 45 Iowa, 160; *Springer* v. *Bartle*, 46 Iowa, 688.

But if the tax deed is valid, then from the time of its delivery it clothes the purchaser, not merely with the title of the person who had been assessed for the taxes and had neglected to pay them, but with a new and complete title in the land, under an independent grant from the sovereign authority, which bars or extinguishes all prior titles and incumbrances of private persons, and all equities arising out of them. *Crum v. Cotting,* 22 Iowa, 411; *Turner v. Smith,* 14 Wall. 553.

It is contended in behalf of the defendants, that the only proper object of the suit to foreclose the mortgage was to sell the title of the mortgagor, and to cut off the equity of redemption of all persons claiming under him any title, lien or interest inferior or subject to the mortgage; and that the title under the tax deed, being adverse and paramount to the rights both of the mortgagor and of the mortgagee, could not be contested in that suit and was not barred by the decree therein. But the authorities cited fall short of supporting that contention.

Multifariousness as to subjects or parties, within the jurisdiction of a court of equity, cannot be taken advantage of by a defendant, except by demurrer, plea or answer to the bill, although the court in its discretion may take the objection at the hearing, or on appeal, and order the bill to be amended or dismissed. *Oliver v. Piatt,* 3 How. 333, 412; *Nelson v. Hill,* 5 How. 127, 132. *A fortiori,* it does not render a decree void, so that it can be treated as a nullity in a collateral action.

As a general rule, a court of equity, in a suit to foreclose a mortgage, will not undertake to determine the validity of a title prior to the mortgage and adverse to both mortgagor and mortgagee; because such a controversy is independent of the controversy between the mortgagor and the mortgagee as to the foreclosure or redemption of the mortgage, and to join the two controversies in one bill would make it multifarious.

Upon that ground, it has been held by this court, as well as by the courts of New York, California and Michigan, on appeals from decrees for foreclosure of mortgages, that the holders of a prior adverse title were not proper parties; and

judges have sometimes used such strong expressions as that the mortgagee "cannot make them parties," or that their title "cannot be litigated," in a suit for foreclosure. *Dial* v. *Reynolds*, 96 U. S. 340; *Peters* v. *Bowman*, 98 U. S. 56, 60; *Eagle Ins. Co.* v. *Lent*, 1 Edw. Ch. 301, and 6 Paige, 635; *Banks* v. *Walker*, 2 Sandf. Ch. 344, and 3 Barb. Ch. 438; *Corning* v. *Smith*, 6 N. Y. 82; *San Francisco* v. *Lawton*, 18 California, 465; *Summers* v. *Bromley*, 28 Michigan, 125.

But in none of the cases just cited was any question presented or adjudged of the effect that a decree of foreclosure, rendered in a suit in which such adverse claimants were made parties and their claims were directly put in issue and determined, might have against them in a subsequent action.

The cases of *Strobe* v. *Downer*, 13 Wisconsin, 10, and *Palmer* v. *Yager*, 20 Wisconsin, 91, were also appeals from decrees of foreclosure; and in a later case in Wisconsin the court summed up the law thus: "It is freely admitted that a foreclosure suit is not an appropriate proceeding in which to litigate the rights of a party claiming title to the mortgaged premises in hostility to the mortgagor, and that, if such rights be so litigated, and be determined upon pleadings and proofs, the decree will be erroneous, and will be reversed. But whether, until reversed, such decree is *coram non judice* and void, so that it may be collaterally impeached, is quite another question. The conclusion would seem to follow, from all of the decisions, that it is not." *Board of Supervisors* v. *Mineral Point Railroad*, 24 Wisconsin, 93, 121.

There are indeed two cases in the Court of Appeals of New York, in which a common decree of foreclosure *pro confesso* was held to be no bar to a subsequent action at law by the owner of a title prior and paramount to the mortgage. But the decision in either case turned on the form in which the plaintiff at law had been made a defendant to the bill of foreclosure.

In the one case, a widow was held not to be barred of her dower by a decree of foreclosure, obtained after the death of her husband, of a mortgage executed by him alone during the coverture, on a bill against her and others as executors and

devisees under his will, alleging that she and the other defendants "have or claim to have some interest in the aforesaid mortgaged premises, as subsequent purchasers, or incumbrancers, or otherwise, but what particular interest your orator is not informed," and praying that they might be foreclosed "of and from all equity of redemption and claim of, in and to" the mortgaged premises. The ground of the decision was, that under the statutes and rules of court the allegations and decree were limited to rights subsequent and subject to the mortgage; and Judge Denio, in delivering judgment, said : "It is not intended to decide that if a party claiming a title prior to the mortgage should be made a party to the suit, and should answer and litigate the question, and should have a decree against him, it would not conclude him in a collateral action." *Lewis* v. *Smith,* 9 N. Y. 502, 516.

In the other case, a testator having devised land to his granddaughter in trust for his daughter for life, with remainder to the granddaughter in fee, the two afterwards executed a mortgage, the granddaughter not executing it as trustee, and having no power by law to execute it as such. The bill and decree of foreclosure were against them as individuals, and therefore the title of the granddaughter as trustee was held not to be barred by the decree, the court saying : "Her interest in remainder was subordinate to the prior estate for life in trust, created by the will, and she was not bound to set up her claim as trustee, when made a party to the foreclosure, in the absence of any averment in the complaint in respect to that interest, or claim that it was subject to the mortgage." *Rathbone* v. *Hooney,* 58 N. Y. 463, 467.

So in a recent case in California, not yet published in the official reports, in which a decree, upon a bill against husband and wife, foreclosing a mortgage, executed by the wife alone, of land held by them in community, was held not to bar a subsequent action of ejectment by the husband, the bill to foreclose contained no averment that the husband had or asserted any claim adverse to the title of the mortgagor, and the decree in terms barred only the equity of redemption. *McComb* v. *Spangler,* 12 Pacific Reporter, 347.

To a bill in equity to foreclose a second mortgage, although the first mortgagee is not a usual or necessary party when the decree sought and rendered is subject to his mortgage, yet, at least when he holds the legal title, and his debt is due and payable, he may, and, when the property is ordered to be sold free of all incumbrances, must be made a party; and if he is, and the bill contains sufficient allegations, he is barred by the decree, the bill in such case being in effect both a bill to foreclose the second mortgage and a bill to redeem from the first mortgage. *Finley* v. *Bank of United States,* 11 Wheat. 304; *Hagan* v. *Walker,* 14 How. 29, 37; *Jerome* v. *McCarter,* 94 U. S. 734; *Miltenberger* v. *Logansport Railway,* 106 U. S. 286, 307; *Woodworth* v. *Blair,* 112 U. S. 8; *Haines* v. *Beach,* 3 Johns. Ch. 459; *Hudnit* v. *Smith,* 1 C. E. Green, 550.

In all the cases heretofore referred to, the adverse title was prior to the mortgage foreclosed. But in the case at bar, the tax title, though adverse to the mortgage title, was not prior to it. The whole title in the land was in the mortgagor at the date of the mortgage; and the title under the tax deed, if valid, was subsequent in time, although paramount in right, to the title acquired under the mortgage and the decree of foreclosure.

Upon the question whether the validity of a tax title subsequent in date to the mortgage may properly be litigated and determined in a suit for foreclosure, there has been a difference of opinion in the courts of the states. The courts of California and of Michigan have held that it may. *Kelsey* v. *Abbott,* 13 California, 609; *Horton* v. *Ingersoll,* 13 Michigan, 409; *Williams* v. *Green,* 34 Michigan, 221, 223. Those of Wisconsin and of Kansas have decided that it should not. *Pelton* v. *Farmin,* 18 Wisconsin, 222; *Roberts* v. *Wood,* 38 Wisconsin, 60; *Short* v. *Nooner,* 16 Kansas, 220. But the question in each of these cases arose upon appeal from the decree of foreclosure; and there is no case, so far as we are informed, in which a decree upon apt allegations in a bill to foreclose a mortgage, adjudging a subsequent tax title to be invalid, has been allowed to be collaterally impeached by the holder of that title in a subsequent action.

On principle, it was within the jurisdiction and authority of the court, upon a bill in equity for the foreclosure of the plaintiff's mortgage, to determine the validity or invalidity of Callanan's tax title, and he was a proper, if not a necessary, party to such a bill.

If the mortgagor or the mortgagee had made a conveyance or assignment after the date of the mortgage, the purchaser or assignee would have been a necessary party to the bill to foreclose. Story Eq. Pl. §§ 193, 199, 201; *Terrell* v. *Allison*, 21 Wall. 289. And in *Stevenson* v. *Texas Railway*, 105 U. S. 703, the Circuit Court, and this court on appeal, upon a bill in equity to foreclose a mortgage, tried the validity of an adverse title under a sale on execution against the mortgagor upon judgments recovered since the mortgage was made, and adjudged that title to be valid, because the judgments were recovered before the mortgage was recorded.

At the date of the plaintiff's mortgage, the entire estate in the land was in the mortgagor, and was included in the mortgage. The subsequent assessment of the taxes created a lien upon that estate, which, upon the sale for non-payment of the taxes, passed to Callanan; but the mortgagor, so long as his right of redemption from that sale existed, still held the legal title, subject first to the lien for taxes, and then to the mortgage. The deed afterwards executed by the county treasurer to Callanan, if valid, conveyed to him all the rights and interests, both of the mortgagor and of the mortgagee, and vested in him a complete title, so that the mortgagor had no title and no equity of redemption, and the mortgagee no lien and no right of foreclosure. There would seem to be no less reason for making Callanan a party to the bill than if he had claimed under a conveyance from or judgment against the mortgagor or the mortgagee since the date of the mortgage. But if Callanan was not a necessary party to the bill to foreclose the mortgage, clearly the mortgagor, if not the mortgagee, might have filed a bill in equity against him to redeem the land from the tax sale, alleging that he had a lien only, and not an absolute title; and by such a bill the issue whether he had or had not such a title would have been directly presented. The

question whether that issue should be determined in the suit to foreclose the mortgage, or in a separate suit, was a question of multifariousness or of convenience, affecting the discretion only, and not the jurisdiction, of the court. By determining, before finally decreeing a foreclosure and sale, the question whether Callanan had a good title under the tax deed, the probability of obtaining a fair price at a sale under the decree of foreclosure would be increased, the rights of all the parties secured, and further litigation avoided. As was said by Lord Chancellor Talbot, and repeated by Chief Justice Marshall, "The court of equity in all cases delights to do complete justice, and not by halves." *Knight* v. *Knight*, 3 P. Wms. 331, 334; *Corbet* v. *Johnson*, 1 Brock. 77, 81.

In the absence of any statute or rule of court, restricting the natural meaning of the words, the allegation in the bill to foreclose, that Callanan "claims some interest in and to a portion of the mortgaged premises, the exact nature of which your orator is unable to set out," was sufficient to include Callanan's interest, whether it was a mere lien for the amount of the taxes, as it would have been if the right of redemption from the sale for taxes had not expired, or if the treasurer's deed was void for any reason, or was a perfect title in fee, as it would be if that right had expired and there was no defect in the tax deed. The prayer of the bill was, not only for a subpœna and a decree of foreclosure against all the defendants named in the bill, but also that the right, title and interest of each and every of them be forever barred and foreclosed by the decree, and that a sale of the premises be made by a master, and for further relief.

Callanan, by the service of the subpœna, had due notice of the allegations and prayer of the bill. By the decree reciting and confirming his default, the bill was taken for confessed against him; and any final decree, warranted by the allegations of the bill, bound him to the same extent as if he had appeared in the suit, and demurred to or contested those allegations. *Thomson* v. *Wooster*, 114 U. S. 104, 111.

The decree not only adjudges, in the usual form, that the mortgage "is a lien upon the mortgaged premises, prior and

paramount to the lien of each and every of the said defendants;" and that, in default of payment by the mortgagor of the sums found due on the mortgage, "the right, title and equity of redemption of each and every of the defendants in this suit be" by a sale under the decree "forever barred and foreclosed." But it further declares that "the purchaser at such sale shall take the premises sold by title absolute," and that "such title shall relate back to the date of the execution of the mortgage," specifying that date.

That decree is a conclusive adjudication, which cannot be collaterally impeached by Callanan or by those claiming under him, that he had no valid title or lien of any kind against the plaintiff as mortgagee of the land in question, and as purchaser at the sale under the decree of foreclosure; and was rightly held to estop the grantees of Callanan to set up his tax title in the present action.

*Judgment affirmed.*