STATE TRUST CO. v. KANSAS CITY, P. & G. R. CO. (WESTINGHOUSE
AIR–BRAKE CO., Intervener).

(Circuit Court, W. D. Missouri, W. D.   February 15, 1904.)

1. EQUITY PLEADING — MULTIFARIOUSNESS — BILL ASSERTING INCONSISTENT
LIENS.

   A bill of intervention filed in a suit to foreclose a mortgage on an in-
   terstate railroad is multifarious, where it asserts two distinct and incon-
   sistent rights to a preferential lien by the intervener—one on the ground
   that it furnished supplies necessary to the operation of the road by the
   mortgagor, which by express agreement were to be paid for from current
   earnings, and that such earnings were made, but were diverted by the
   mortgagor to other purposes, which gives the intervener a preferential
   lien in equity on the corpus of the property; and the second on the ground
   that intervener has perfected a mechanic's lien, under the statutes of the
   state, for the same supplies, which entitles it to a lien on the real prop-
   erty of the mortgagor company within the state only, and, under the stat-
   ute, would require proof that the supplies were furnished for the better-
   ment of the property, and without other security or reliance for payment
   than the statutory lien.

2. SAME–PROCEDURE—COMPELLING ELECTION.

   Where a bill is multifarious, in asserting two rights of action which are
   inconsistent with and repugnant to each other, although no demurrer is
   interposed on such ground, the court may on final hearing require the
   complainant to elect between the two claims, and dismiss the bill as to the
   other.

In Equity.   In the matter of the bill of intervention of the Westing-
house Air-Brake Company.

See 120 Fed. 398.

Haff & Michaels, for intervener.

Lathrop, Morrow, Fox & Moore, for defendants.

PHILIPS, District Judge.   Not until the coming in of the master's
report, and during the argument on exceptions thereto, was the atten-
tion of the court drawn to a particular consideration of the character
of the bill of intervention herein.   The bill discloses that the intervener
is claiming under two distinct liens—one, in assertion of an equitable
lien, preferential to the mortgage under which the Kansas City, Pitts-
burg & Gulf Railroad was sold under foreclosure proceedings; the
other, under a mechanic's lien filed a few days after the appointment of
receivers in said foreclosure proceedings.   It at once occurred to the
court that the situation presented an anomaly in equitable procedure.
A closer examination of the bill and the findings of the master has per-
suaded the court that this condition produced by the double aspect of
the bill ought to be obviated.   The bill is clearly multifarious.   "By
multifariousness in a bill is meant improperly joining in one bill dis-
tinct and independent matters, and thereby confounding them, as, for
example, the uniting in one bill of several matters, perfectly distinct
and unconnected, against one defendant."   Story's Eq. Plead. (10th
Ed.) par. 271.   "The joinder of distinct and independent matters, each
of which would constitute a cause of action, in the same bill, brought
by a single complainant against the same defendant. * * * No
general rule can be laid down as to what constitutes multifariousness.

128 F.—9

The court must exercise a sound discretion in determining from the circumstances of each case whether the bill is liable to that objection. * * * A reason given for this is the inconvenience of mixing up distinct matters, which may require very different proceedings or decrees by the court, and embarrass the defendant in his proper defense against each." Fletcher on Eq. Pleadings, pars. 107, 108.

The bill shows on its face that about four-fifths of its averments and recitals are occupied in showing that the intervener is entitled to a preferential equitable lien, based upon the distinct averments that the supplies furnished by intervener to the mortgagor, the Kansas City, Pittsburg & Gulf Railroad Company, under a distinct understanding between the vendor and vendee, were indispensably necessary to its operation, and that the same were to be paid for out of the current earnings of the road. And then, in recognition of the settled rule of law, to entitle the vendor to the preference sought, it is alleged that the earnings chargeable with such lien were in fact realized, and were diverted to other uses than the current expenditures of the road, amply sufficient to have paid, if applied according to the understanding of the parties to the payment of, the debt in question. In short, as contended for by counsel for intervener at the hearing, it was sought by the bill and by the proofs to bring the case within the purview of the rulings of the Supreme Court in Southern Railway v. Carnegie Steel Company, 176 U. S. 257, 20 Sup. Ct. 347, 44 L. Ed. 458—a state of facts and proofs, it must be conceded, hardly consistent with the right to a mechanic's lien for the same debt.

The great volume of evidence taken before the master was directed to the issues respecting the equitable lien; and the master has found that the proof fully sustains them, and has reported in favor of a preferential claim over the mortgagee and the defendant the Kansas City Southern Railway Company, the purchaser under the foreclosure proceedings, to be enforced, if necessary, on the corpus of the railroad property. It is quite observable, on the taking of the evidence, that the minds of intervener's counsel were so occupied with making the proofs before the master essential to establish the equitable preferential lien that the evidence introduced respecting the validity of the mechanic's lien was most meager, leaving its validity very questionable. But the master has also found that the intervener is entitled to have said mechanic's lien enforced against the railroad property in question. Only a single paragraph of the bill is devoted to the averments respecting the existence and validity of the mechanic's lien; and the master has thus turned the matter over to the court to determine which of the two liens shall be enforced, or whether both of them. This double attitude of the intervener, based on both of said alleged liens, is inconsistent and repugnant. The one rests entirely upon general rules and principles of equity, and the other, unknown to the common law, is solely the creature of the local statute. The facts essential to create the one are distinct, in material particulars, from those essential to create the other—so much so, that the two claims and relief thereunder cannot exist and be enforced simultaneously. In law, the proof that supports the first is incompatible with the assertion of the other. The very foundation of the claim in equity is that the materials fur-

nished were under an agreement, expressed or implied (and, under the proofs and findings of the master in this case, an express agreement), that the vendor looked for payment to the current earnings of the road, and that there were such earnings, but the same had been diverted by the road to other purposes, which entitle the vendor to the equitable lien on the corpus of the railroad; while the mechanic's lien rests upon a contract between the parties that the materials furnished were to go into the betterment of the railroad, that they did enter therein, and the mechanic's lien was filed in reliance upon this security, that no other security or reliance was intended or given, and that all the acts required by the statute to complete the lien were complied with.

The measure of relief and the judgment of the court on the two liens are different. Under the equity lien, the vendor must look alone to the earnings of the road, on the faith of which he gave the credit. He must therefore show by his proofs that there were such earnings, to which his lien would attach, and that, by reason of their diversion to other purposes and uses than the legitimate expenditures in the operation of the road, the equitable intervention of the court is invoked to subject the corpus of the property, to the extent of the benefit it has received from such diverted fund. Consequently, if there were no such current earnings, and no such diversion, no such lien can be recognized and enforced. Furthermore, the equitable lien, if the materials furnished were employed along the whole extent of the line, should create a charge upon the whole extent of the railroad line from the Missouri river to the Gulf of Mexico, the property bought by the purchaser at the foreclosure sales. It would be subject to the further limitation that if the debt claimed amounted to, say, $50,000, but the fund diverted was only $25,000, only 50 per cent. of the debt could be enforced as a lien. It would also be subject to the further condition that the lienor could only share pro rata with other liens of equal dignity. Whereas the statutory mechanic's lien covers "the roadbed, station houses, depots, bridges, rolling stock, real estate, and improvements of such railroad," limited, however, to such property in the state of Missouri, where the lien was filed. Section 4239, Rev. St. Mo. 1899. By section 4240 of this statute, such lien "shall attach to the buildings, erections, improvements, roadbed and property mentioned from the date of the commencement of such work and labor, or from the time such materials were furnished or delivered, and shall be prior to all mortgages or encumbrances placed upon the property affected by this lien subsequent to the passage of this article." From which it is apparent that no other lienor can come in and share in the proceeds of the judgment for the enforcement of the lien; and, by section 4250 under which the lien is sought to be enforced, "the judgment, if for the plaintiff, shall be against such defendant as in ordinary cases, with the addition that if no sufficient property of the defendant can be found to satisfy such judgment and costs of suit, then the residue thereof be levied" on the property covered by the lien.

It being a statutory lien, the judgment of this court would have to follow absolutely the statutory direction. There is no prayer in this bill for such judgment. But the first prayer is that said claim of the petitioner be adjudged and decreed to be an indebtedness and liability

contracted by the Gulf Railway for current expenses, "and necessary to keep said railroad a going and continuous business, and concern, from day to day, and that said claim be decreed a lien on the corpus of the property sold at the foreclosure sale, and on the proceeds of said sale, and on the funds and assets in the hands of the receivers"; and, second, for a decree declaring said claim on said open running account to be a lien by virtue of the statute upon the roadbed, station houses, depots, bridges, rolling stock, real estate, improvements, and all property whatsoever which did belong to the said Gulf Railroad, and which is now held, owned, controlled, or operated by the defendant Southern Railway Company, prior to any mortgages or liens whatsoever; and, third, ordering and directing that there be paid to the petitioner out of the funds now or hereafter in the hands of said receivers, or out of the funds realized from the sale of said property under said foreclosure, or by the said Southern Railway Company, or its assigns, out of the treasury or funds in its hands, sufficient to pay the amount of the petitioner's claim.

The prayer for judgment on the mechanic's lien is about as indefinite and extensive as the description of the property given in the mechanic's lien, which seems to have proceeded upon the assumption that the lien extended to all the road and property of the Gulf Railroad Company, both in and outside of the state, when it appears from the bill of complaint, and especially the records of this court in the foreclosure proceedings, that the line of railroad extended over independent corporations, created under the laws of the states of Texas, Arkansas, and Kansas.

In such condition of the bill of complaint and the findings of the master, what can or should the court do? It is a condition of legal complications, embarrassments, and contradictions, for which the intervener, by his bill of complaint, is primarily responsible. The usual remedy for such manifest and irreconcilable multifariousness is by demurrer, which the defendants did not interpose. In so far as the defendants are concerned, the failure to demur could be held to constitute a waiver on their part; but the court may, however, take the objection at the hearing sua sponte, for the court is not bound to allow a bill of such a nature, although the party may not take the objection in season. Story, Eq. Plead. (10th Ed.) § 271; Greenwood v. Churchill, 1 Myl. & K. 559. "Such a bill may be dismissed by the court of its own accord, even if not objected to by the defendant." Fletcher, Eq. Plead. § 227.

As said by Mr. Justice Gray in Hefner v. Northwestern Life Insurance Company, 123 U. S. 752, 8 Sup. Ct. 339, 31 L. Ed. 309:

"Multifariousness as to subjects or parties within the jurisdiction of a court of equity cannot be taken advantage of by a defendant, except by demurrer, pleading, or answer to the bill, although the court, in its discretion, may take the objection at the hearing or on appeal, and order the bill to be amended or dismissed."

In view of the fact that the evidence has been taken and completed on both issues tendered in the bill, the court will not avail itself of its right to dismiss the bill, as there seems, from the cursory examination the court has made of the evidence, an apparently meritorious claim to

equitable relief; but the court will require the intervener to make its election in writing as to which one of the liens sought to be enforced it will stand upon for final decree, and dismiss the bill as to the other claim.