BEHRENDS et al. v. SUTHERLAND et al.

(First Division. Juneau. March 28, 1910.)

No. 766A.

MORTGAGES (§ 434*)—FORECLOSURE—PARTIES—FRAUD—MINES AND MINERALS.

The plaintiffs alleged in their bill of complaint that they were the owners of several mortgages on the placer mining claims described therein; that the mortgagor sold the claims to the defendant Sutherland subject to the mortgages; and that Sutherland paid the purchase price to the mortgagor. Thereafter Sutherland, acting in collusion with his attorney, the defendant, Laffoon, procured the latter to relocate the mining claims for his benefit under the United States statutes for Sutherland's alleged failure to do the annual assessment work. Plaintiffs brought suit to foreclose their mortgages, making Laffoon a party defendant, and asking to have his title determined to be fraudulent and void in the foreclosure suit. On demurrer by Laffoon, *held*, that Laffoon was a proper party defendant, and the court had jurisdiction to determine his title in the foreclosure suit; demurrer overruled.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1272–1287; Dec. Dig. § 434.*]

The defendant R. F. Laffoon has demurred to the complaint herein on a number of grounds, but the only ones contended for in the argument which was made by him were

the fourth and fifth grounds therein stated; that is, that there was a defect of parties plaintiff and defendant, and that several causes of action had been improperly united.

The bill of complaint states in substance that on May 14, 1906, certain mining claims were owned and in the possession of the defendants F. D. Nowell and the Silver Queen Mining Company; that between May 15, 1905, and July 18, 1906, these two defendants made three certain mortgages described in the bill of complaint, one to the plaintiffs Malony & Cobb, a second to the plaintiff Behrends, and a third to the plaintiff Malony; that afterwards, on the 1st day of July, 1907, the defendants Nowell and the Silver Queen Mining Company executed a contract to the defendant Sutherland, contracting to convey to Sutherland or his grantees said mining property, the deed therefor to be placed in escrow with the plaintiff Behrends, Sutherland to pay therefor to the defendant Nowell $25,000, and to further pay to the defendants Shattuck & Co. and Forrest, who had certain claims against the property, $3,750, upon the payment of which they were to deliver part of the collateral held by them to Sutherland and part to Nowell; that said contract recited that it was intended as an option, and that the second party, Sutherland, assumed no personal obligation by making the payments mentioned; that the deeds to be made to the second party were to warrant title so far as the defendants Nowell and the Silver Queen Mining Company were concerned, excepting as to the three mortgages above mentioned and a further mortgage to George M. Nowell for $1,500, the payments of all of which it was therein recited had been extended to June 1, 1908, upon failure to make any of the payments mentioned, those made to become forfeited as liquidated damages.

The defendant Sutherland made a written agreement on the 20th of October, 1907, promising to pay to the plaintiffs Greene and George, in case he bought the property, as part of the purchase price, certain debts owing by F. D. Nowell to them.

The complaint further recites: That Sutherland was placed in possession of the property, and that the $25,000 mentioned

in the contract was paid in full, but none of the other payments were made either on the mortgages or other claims. That said Sutherland secured numerous extensions of the time of payment, and in consideration of the last extension of time so secured, expiring June 1, 1909, he agreed to have performed sufficient work to hold the possessory title to the property, such work to be performed by the defendant Mitchell, then in possession for him (the said Sutherland), Mitchell to make the required proof of record of such work. That, after having obtained said extensions as aforesaid, the said Sutherland and the said R. F. Laffoon and J. R. Mitchell, who was acting solely as agent in the interests of his co-conspirators, entered into a corrupt and fraudulent scheme and conspiracy to obtain the paramount title to said property from the government without paying the said mortgages and claims, and to obtain a title superior thereto. That, pursuant to said conspiracy, it was agreed that said J. R. Mitchell, who was then in possession of said property for W. J. Sutherland, should fail to place on record any proof of annual labor or assessment work upon said claims for the year 1908, and that on the 1st day of January, 1909, the said R. F. Laffoon, who is and then was attorney and legal advisor of the said W. J. Sutherland, and related to him by marriage, should make pretended relocations of all said claims for the use and benefit of W. J. Sutherland; and pursuant to said agreement and conspiracy the said J. R. Mitchell, although the requisite amount of work and improvements was actually done and performed upon said premises, in order to hold same, and although he was in actual possession of said claims for W. J. Sutherland on the 1st day of January, 1909, and engaged in working the same, did, on the date last aforesaid, permit, and the said R. F. Laffoon did make, said pretended relocations of said claims, naming the same in the pretended notices thereof Emma Nos. 1 to 13, inclusive; and the said J. R. Mitchell has failed and refused to make and record the affidavit of work required by law, though in truth and in fact said work was actually done.

Plaintiffs further show and allege that the pretended relocations aforesaid were made for the use and benefit of said W.

J. Sutherland, and were made for the purpose of defeating said liens upon said property and defrauding these plaintiffs out of the moneys due them and secured by said liens, and for no other purposes; that in truth and in fact the said premises were not open to relocation on January 1, 1909, but were then and there covered by valid subsisting prior mining locations under which the said F. D. Nowell and the Silver Queen Mining Company were the legal owners thereof; that said locations had been kept in full force and effect by the performance of the requisite amount of labor and improvements thereon, especially for the year 1908, and said pretended relocations by the said R. F. Laffoon are and were void.

Plaintiffs further show that said relocations are void for the further reason that the said Laffoon did not go upon said claims and post notices thereon, nor stake the same so the boundaries thereof could be readily traced upon the ground, but merely filed notices thereof for record in the office of the United States commissioner and ex officio recorder at Juneau, Alaska.

Plaintiffs further allege and show, however, that, if the said Laffoon did obtain any right or title whatsoever by said relocations to said premises, then the same was for the use and benefit of the said W. J. Sutherland and these plaintiffs.

Plaintiffs further show that heretofore, on or about August, 1909, a suit was instituted in this honorable court No. 745A upon the docket to foreclose said mortgages and the vendor's liens in favor of said T. H. George and N. Greene; that thereafter, on or about November 13, 1909, the said Sutherland, through his agent, J. R. Mitchell, notified these plaintiffs that, unless said suit were withdrawn, the assessment work for the year 1909 upon said claims would not be performed; that plaintiffs declined to withdraw or dismiss said suit, and thereupon the defendant Laffoon, for the first time, set up a claim to said premises under his pretended relocations aforesaid; that, in order to preserve their rights and equities in and to said property and their liens thereon, these plaintiff lienholders engaged a force of men on or about November 15, 1909, and with the consent of the said F. D.

Nowell and the Silver Queen Mining Company proceeded to and did take possession thereof under their said liens; that thereupon the said Laffoon forbade these plaintiffs from going upon said premises, and forbade their employés from going thereon, and asserted a claim thereto paramount to the liens and title of plaintiffs, and is claiming the possession and right of possession of all said property, and threatens to oust these plaintiffs therefrom.

Plaintiffs pray that Sutherland be decreed to have forfeited all interest in the property under said option; that the claim of defendant Laffoon be set aside as a cloud upon the title; that, if said Laffoon's relocations of the property be found to have any validity, they be decreed to have been in trust for and the title of the said Sutherland.

L. P. Shackleford and J. F. Malony, of Juneau, for plaintiffs.

R. F. Laffoon, of Tacoma, Wash., for defendants.

CUSHMAN, District Judge. The defendant upon his demurrer contends that the complaint discloses that his claim is one of adverse and paramount title which renders the bill multifarious, and that the question of his title cannot and should not be litigated in these causes.

If this case is not an exception, the contention would be well grounded, for it has been said by the Supreme Court of the United States:

"As a general rule, a court of equity, in a suit to foreclose a mortgage, will not undertake to determine the validity of a title prior to the mortgage and adverse to both mortgagor and mortgagee, because such a controversy is independent of the controversy between the mortgagor and the mortgagee as to the foreclosure or redemption of the mortgage, and to join the two controversies in one bill would make it multifarious." Hefner v. Northwestern, 123 U. S. 751, 8 Sup. Ct. 337, 31 L. Ed. 309; Dial v. Reynolds, 96 U. S. 340, 24 L. Ed. 644; Peters v. Bowman, 98 U. S. 56, 25 L. Ed. 91.

But it is also stated in the first one of the above-cited cases:

"On principle, it was within the jurisdiction and authority of the court, upon a bill in equity for the foreclosure of the plaintiff's mortgage, to determine the validity or invalidity of Callanan's tax title,

and he was a proper, if not a necessary, party to such a bill. ＊ ＊ ＊ There would seem to be no less reason for making Callanan a party to the bill than if he had claimed under a conveyance from, or judgment against, the mortgagor or the mortgagee since the date of the mortgage. But if Callanan was not a necessary party to the bill to foreclose the mortgage, clearly the mortgagor, if not the mortgagee, might have filed a bill in equity against him to redeem the land from the tax sale, alleging that he had a lien only, and not an absolute title; and by such a bill the issue whether he had or had not such a title would have been directly presented. The question whether that issue should be determined in the suit to foreclose the mortgage, or in a separate suit, was a question of multifariousness or of convenience, affecting the discretion only, and not the jurisdiction, of the court. By determining, before finally decreeing a foreclosure and sale, the question whether Callanan had a good title under the tax deed, the probability of obtaining a fair price at a sale under the decree of foreclosure would be increased, the rights of all the parties secured, and further litigation avoided."

Judge Ross, of our own Circuit Court of Appeals, has said in an opinion of that court in Savings & Trust Co. v. Bear Valley Irrigation Co., 112 Fed. 693, at page 703, in ruling upon a demurrer, where the question was as to whether receiver's certificates were liens superior or inferior to the mortgage:

"It is undoubtedly well settled that claims adverse to the mortgagor cannot be litigated and determined in a foreclosure proceeding. [Citing authorities.] But the rights asserted under these contracts, and under the class A and class B certificates, and their concurrent contracts, are not adverse to the title of the complainant's mortgagor, but under and by virtue of it. The true character and extent of those rights, and whether or not they are, as alleged in the complainant's amended bill, subject to the complainant's mortgage, or, as alleged in the answers, superior to it, can, as has already been said, be best determined after the proofs are taken and the cause is submitted upon the merits."

Where the bill of complaint sets up fraud, collusion, or a trust relation between the party seeking to establish for himself an adverse or paramount title and the mortgagor or mortgagee, or both, the courts have been still more positive in their language sustaining both the power and propriety of the court in considering the nature of such title in a foreclosure suit. Mendenhall v. Hall, 134 U. S. 559, 568, 10 Sup. Ct. 616, 618 (33 L. Ed. 1012); Appleton Water Works Co. v. Central Trust Co., 93 Fed. 286, 35 C. C. A. 302.

The latter case was one decided by the United States Circuit Court of Appeals for the Seventh Circuit, and in the course of the opinion the law is stated at page 289 of 93 Fed., at page 305 of 35 C. C. A., as follows:

"It is well settled, both upon principle and authority, that paramount title adverse to the mortgagor cannot be tried in an action to foreclose the mortgage, although in Hefner v. Insurance Co., 123 U. S. 747 [8 Sup. Ct. 337, 31 L. Ed. 309], there is strong countenance for so adjudicating upon a tax title which 'was subsequent in time, although paramount in right, to the title acquired under the mortgage' in suit. But here the allegations and undisputed showing of purported adverse title rest upon tax titles for defaults in the payment of taxes which arose when the defendant Venner was president and financial manager of the mortgagor company, or of the predecessor company, as to the earlier certificate, where the relations of the parties will be regarded of like import in equity, undisturbed by the reorganization; that the tax certificates were bought in by Mr. Venner, or came into his hands under such relation, and tax titles were taken to the New England Waterworks Company, of which Mr. Venner was the organizer, and was president during all the times referred to. As president of the mortgagor company, then apparently insolvent, he received and held the tax certificates as trustee for the mortgagee and creditors, or, if not as a technical trustee, at least in a fiduciary relation. Manufacturing Co. v. Hutchinson, 63 Fed. 496 [11 C. C. A. 320]. And no title adverse to the mortgagee can be created through such source, but the transaction must be regarded as a payment of the tax. [Citing cases.] From such fiduciary relation alone, inquiry would be open in this action to determine the character of the title, and surely the further allegations of collusion, by which the newly-organized company obtained possession from the mortgagor company, as foundation for its tax titles, furnish ample support for the bill in this aspect. Whether inquiry is open as to invalidity of the tax titles in other respects, as alleged, may be left for determination at final hearing. If the allegations previously referred to are sustained, both possession and title are under the mortgagor, and subordinate to the mortgage lien, and therefore subject to adjudication in this action. [Citing cases.]"

In the Mendenhall Case the Supreme Court has said:

"The first question, upon the merits, to be considered, relates to the demurrer and plea of Charles F. Hall. It is contended that he was not a necessary party to the suit to fix the amount of the indebtedness of Clark N. Hall, and that the demurrer, for that reason, was properly sustained. If that had been the sole object of the suit, the plaintiff could undoubtedly have proceeded at law against Clark N. Hall alone. But such a suit would not have given the relief required. The plaintiff claimed a lien on the mortgaged property to secure the payment of the notes given by the mortgagor

(Clark N. Hall). The property was claimed by Charles F. Hall in virtue of a tax sale. While the latter might have been proceeded against alone for the purpose of determining whether his right to the land was not subordinate to the mortgage lien, it was competent, under the practice in equity prevailing in the courts of the United States, and in order that full and adequate relief might be had, to unite in the same suit both the mortgagor and the party claiming the property adversely to the lien of the mortgage, by virtue of proceedings had subsequently to its execution. If the plaintiff was entitled to have the property sold in satisfaction of the debt secured by the mortgage, it was his right to have it sold freed from any apparent claim thereon wrongly asserted by the holder of the tax title. Such relief could not be had without making the latter a party to the suit. * * * The case, in many respects, is like Austin v. Citizens' Bank and Sheriff, 30 La. Ann. 689, in which it appeared that a mortgage creditor proceeded directly against the mortgaged property, which had been sold for taxes, and the title taken in the name of a third person. The holder of the tax title brought a suit to enjoin such proceeding. The court said: 'The plaintiff (the holder of tax title) entrenches himself behind our ruling in Lannes v. Workingmen's Bank, 29 La. Ann. 112, and insists that his title must be held good until it is annulled in a direct action. But that principle holds good only as, to those titles that are bona fide, and are acquired without fraud, or that are real and not simulated. Unquestionably a purchaser at a tax sale may acquire a good title to a valuable property for a small price, if the requisite formalities have preceded and attended the sale. * * * But no government will permit its machinery, constructed to enforce the payment of public dues to the fisc, to be used to manipulate a fraud, and, if the purchaser is a party to the fraud, he must share its punishment. * * * The purchase by Moss was nothing more or less than a purchase by Mrs. Austin, the debtor and mortgagor, through her son, the plaintiff. The money paid as the price at the tax sale was only what she, as the owner of the property, owed the state, and what she honestly and in good conscience ought to have paid without, and before, and to prevent a sale. If she could not pay it, the debt being exigent and of so high a rank, she should have acquainted her creditor and mortgagee with its imminence, instead of observing the suspicious reticence which characterized her conduct. The creditor's rights, as mortgagee and vendor, cannot be imperiled by the mortgagor's collusive combination with others to interpose an apparent but fraudulent obstacle in his way in enforcing those rights.' All that was said in that case is pertinent to the one before us. The mortgagor had obtained liberal indulgence as to time from the mortgagee. He made such representations of his embarrassed financial condition as induced the mortgagee to forbear taking steps to enforce his lien upon the property. He gave positive assurances that he would make a payment of $2,500 on the mortgage debt by the fall of 1882. He knew that there were taxes upon the property which it was his duty to pay, and that their nonpayment endangered the security upon which his generous creditor depended for the payment of the notes

given for the property. And his brother, with many expressions of friendship for the mortgagee and his family, joined in the appeals for time, assuring the mortgagee that he would himself assist in meeting the mortgagor's engagements to pay, if the mortgagee would wait until January 1, 1883. He voluntarily promised that he would keep the mortgagee 'posted about things.' But neither the mortgagor nor his brother informed the mortgagee that the land was advertised to be sold for the taxes which the mortgagor was under a duty to pay. The way in which Charles F. Hall complied with his promise to keep the plaintiff posted was to withhold information as to the tax sale, buy the land for the amount of the taxes, and take the title in his own name. The evidence leaves no doubt that the nonpayment of taxes by the mortgagor, and the purchase of the property by his brother, was in execution of a scheme upon their part to defeat the mortgagor's lien upon the land."

A claim of adverse or paramount title involves at least two propositions: First, Is the claim an adverse one? Second. Is the claim of title good? The first of these questions must necessarily be one to be properly decided in this or any other similar case, because, if the court is not authorized to decide whether the claim of title is an adverse or subordinate one, all that would be necessary to defeat the court's jurisdiction would be to assert that any claim which a party defendant, other than the mortgagor, had was adverse.

The demurrer will be overruled.