## STEVENSON *v.* TEXAS RAILWAY COMPANY.

1. Judgment creditors who cause an execution to be levied upon lands of the defendant in Texas acquire a lien superior to that of his unrecorded mortgage, whereof, at the date of the levy, they had no notice.

2. A purchaser at the sale under that execution is entitled to all the rights of the creditors, and takes the lands freed from the mortgage, although it be recorded before such sale.

APPEAL from the Circuit Court of the United States for the Western District of Texas.

The facts are stated in the opinion of the court.

*Mr. William S. Herndon* and *Mr. Anthony Q. Keasbey* for the appellant.

*Mr. Walter D. Davidge* and *Mr. James Lowndes* for the appellee.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

In the view which we have taken of this case, it becomes necessary to decide but a single question. The facts necessary to its determination may be summed up as follows:—

The Texas and Pacific Railway Company is a corporation

created by acts of Congress, for the purpose of constructing, maintaining, and operating a line of railway, from a point at or near Marshall in Harrison County, Texas, by way of El Paso, to the Pacific Ocean. By the terms of its charter, it was authorized to purchase the stock, land grants, franchises, and appurtenances of, and, on such terms as might be agreed on, consolidate with, any railroad companies theretofore chartered by congressional, State, or territorial authority, on the route prescribed, but not with any competing company; and thereupon all such interests and rights should vest in the Texas and Pacific Railway Company, the latter assuming any indebtedness of such companies, as they might agree, and the consolidation and purchase not impairing any lien which might exist thereon.

The Southern Pacific Railroad Company was a corporation of the State of Texas, and, being thereunto duly authorized, became consolidated with the Texas and Pacific Railway Company, on March 21, 1872, the latter becoming thereby the purchaser, in consideration of $3,000,000 paid to the former, of all its property, rights, and franchises.

The Southern Pacific Railroad Company, which made this sale to, and became consolidated with, the Texas and Pacific Railway Company, was the successor in law of the Texas Western Railroad Company, in the following manner: The original company was chartered in 1852 to construct a railroad from a suitable point on the eastern boundary of the State to El Paso on the Rio Grande. In 1856, its name was changed by the legislature of Texas to that of the Southern Pacific Railroad Company. Prior to September, 1859, this company had completed twenty-five miles of road west from Marshall, and had earned, it is claimed, about 256,000 acres of land, granted to it by the State. Having become insolvent, it was sold under execution upon a judgment at law, on Sept. 6, 1859, to R. V. Richardson, under the provisions of the fifth section of the act of Feb. 7, 1853, Paschal's Digest, art. 4912, which is as follows:—

"The road-bed, track, franchise, and chartered rights and privileges of any railroad company in this State, shall be subject to the payment of the debts and legal liabilities of said company, and may

be sold in satisfaction of the same; but the said road-bed, track, franchise, and chartered powers and privileges shall be deemed an entire thing, and must be sold as such; and in case of the sale of the same, whether by virtue of an execution, order of sale, deed of trust, or any other power, the purchaser or purchasers at such sale, and their associates, shall be entitled to have and exercise all the powers, privileges, and franchises granted to said company by its charter, or by virtue of the general laws of the State; and the said purchaser or purchasers, and their associates, shall be deemed and taken to be the true owners of said charter and corporators under the same, and vested with all the powers, rights, privileges, and benefits thereof, in the same manner and to the same extent as if they were the original corporators of said company; and shall have power to construct, complete, equip, and work the road, upon the same terms and under the same conditions and restrictions as are imposed by their charter and the general laws of this State."

As authorized by this law, Richardson and his associates reorganized the Southern Pacific Railroad Company by the creation of a new capital stock, — the largest part of which was subscribed and owned by Richardson himself and Jeptha Fowlkes, — and the election of a board of directors and officers, as provided by their by-laws, on Oct. 3, 1859.

On Aug. 25, 1860, the Southern Pacific Railroad Company, as thus reorganized, executed to R. V. Richardson and Vernon K. Stevenson, as trustees, two mortgages, which were acknowledged Sept. 10, and proved in New York before a Texas commissioner Sept. 12, 1860, and recorded in Harrison County, Texas, March 1, 1861. One of them was to secure a proposed issue of bonds, to the amount of $25,000,000, for purposes of construction and other necessary expenses, payable Jan. 1, 1883, with interest at the rate of seven per cent per annum, and it embraced all the property of the company, including its land grant from the State. The other covers one million acres of the land grant, to be selected by the company for sale, to meet the accruing interest on the same bonds.

The complainants claim to be holders for value of about two hundred of the bonds secured by these mortgages, out of about three hundred and fifty, which was the whole number issued. Their bills were filed for the foreclosure of the mortgages, and

the sale of the mortgaged property, for the payment of the amount due on account of the bonds and accrued interest.

Against the lien of these mortgages the appellee, the Texas and Pacific Railway Company, claims a paramount title. This title rests, primarily, upon a judicial sale of the same property and rights, then vested in the Southern Pacific Railroad Company, as it existed under the Richardson reorganization. The sale was made by the sheriff of Harrison County, Texas, on Sept. 3, 1861, to H. S. Fulkerson, of the whole road and franchises of the company, as an entirety, under the provisions of the foregoing article 4912, upon executions levied under four judgments at law, as follows : —

1. Judgment in favor of J. W. Saunders, April 6, 1859, for $300.09 and costs, $74, in all $374.09, upon which was credited before sale $277, leaving due a balance of $97.09. Execution was levied under this judgment Aug. 9, 1860.

2. Judgment in favor of Henry Wickland, Sept. 26, 1860, for $3,500 and costs. Execution issued and levied July 11, 1861.

3. Judgment in favor of Amelia Swanson, Oct. 27, 1860, for $2,480.50 and costs. Execution issued Nov. 22, 1860, levied Jan. 3, 1861.

4. Judgment in favor of J. B. Williamson, Oct. 23, 1860, for $1,000 and costs. Execution issued Nov. 23, 1860, levied Jan. 3, 1861.

The purchase-money at the sheriff's sale to Fulkerson was $7,500, which was just enough to satisfy the executions.

It will be observed that of these judgments the first alone was recovered prior to the date of the execution and delivery of the mortgages, but all of them were recovered, and the executions issued upon the first, third, and fourth were levied before March 1, 1861, the date of the record of the mortgages.

There is neither judgment, claim, nor proof that at the time of the levy of these executions the plaintiffs had any notice of the existence of the then unrecorded mortgages to Richardson and Stevenson; and it is conclusively established as the law of Texas that the purchaser at such sale acquires a title superior to that of such mortgagees.

Article 4988, Paschal's Digest, reads as follows: "All bargains, sales, and other conveyances whatever, of any lands, tenements, and hereditaments, whether they may be made for passing any estate of freehold or inheritance, or for a term of years; and deeds of settlement upon marriage, whether land, slaves, money, or other personal thing, shall be settled or covenanted to be left or paid, at the death of the party or otherwise; and all deeds of trust and mortgages whatsoever, which shall hereafter be made and executed, shall be void as to all creditors and subsequent purchasers for valuable consideration without notice, unless they shall be acknowledged or proved and lodged with the clerk, to be recorded according to the directions of this act, but the same, as between the parties and their heirs, and as to all subsequent purchasers, with notice thereof or without valuable consideration, shall nevertheless be valid and binding."

And art. 4994, Paschal's Digest, provides that "Every conveyance, covenant, agreement, deed, deed of trust, or mortgage in this act mentioned, which shall be acknowledged, proved, or certified according to law, and delivered to the clerk of the proper court to be recorded, shall take effect and be valid, as to all subsequent purchasers, from the time when such instrument shall be so acknowledged, proved, or certified, and delivered to such clerk to be recorded, and from that time only."

These statutory provisions were construed by the Supreme Court of Texas in the case of *Grace* v. *Wade*, 45 Tex. 522. In that case the only question was "whether a vendee of land, who claims title by an unrecorded deed or bond for title, or the purchaser, with notice of such deed or bond, at execution sale on a judgment against the vendor, where the creditor has no notice of the title or claim of the vendee, at the date of the levy of the execution, has the better title." The court affirmed the two propositions, that the lien acquired by a creditor without notice by the judgment and levy of execution is superior to the unrecorded deed of the vendee, and that a purchaser under the execution, with notice, is entitled to all the rights of the creditor. The court said: "Now, if the unrecorded instrument cannot take effect, but is void as to creditors, it is absurd

to say that the creditor's lien does not bind the land to which it applies, or that it cannot be enforced by the sale of the land so bound by it for the payment of the debt, just ·as if no such instrument existed. And it would be equally as absurd to say that the right acquired by the creditor by his lien, not merely to purchase himself, but to have the land sold in open market, when once secured, can be taken away by the subsequent record of such instrument, or that the party holding such lien can, by subsequent notice, be precluded from the full benefit of his lien for the satisfaction and discharge of ·his demand, except by becoming himself the purchaser."

The case of *Price* ·v. *Cole* (35 Tex. 461), to the contrary, is directly overruled, the court saying: " We conclude by saying, that while the judgment in *Price* v. *Cole* is not warranted by the previous decisions in our own courts or elsewhere, and must therefore be overruled, we adhere to and sustain the doctrine to be deduced from the case of *Ayres* ·v. *Duprey* (27 Texas, 593), that one who purchases at sheriff's sale may claim protection under the statute as a purchaser, even when the judgment creditor himself is not, as creditor, within its protection, and *vice versa.* While he cannot bring himself within its provisions in the character of a purchaser, he or others subrogated to his rights may be entitled to its protection as creditor."

This decision has been followed and approved in *Grimes* v. *Hobson*, 46 Tex. 416; *Catlin* v. *Bennatt*, 47 id. 165; and *Mainwarring* v. *Templem* ·., 51 id. 205; and we adopt it as the law of Texas applicable to and governing the present case.

It follows that the legal title of the Texas and Pacific Railway Company, derived through its purchase from and consolidation with the Southern Pacific Railroad Company, which duly succeeded to the title of Fulkerson, is superior to that of the mortgages under and through which the appellants claim as holders of the bonds. It is urged, however, on behalf of the appellants, that the circumstances of the execution sale to Fulkerson were such as to fasten upon him a constructive trust in their favor as creditors of the company; but, in our opinion, if that were conceded, there is no ground apparent on the record upon which that equity could be successfully asserted

against the Texas and Pacific Railway Company, a purchaser for valuable consideration, having notice, it may be, of the existence of the mortgages to Richardson and Stevenson, but without notice of any facts which in equity would subordinate to them the rights acquired by the sheriff's sale to Fulkerson.

For these reasons the decree of the Circuit Court is

*Affirmed.*