# MANOGUE v. BRYANT.

EQUITY; CONTRACTS; ESTOPPEL; RECORDING ACTS; NOTICE.

1. An erroneous description in a deed of trust which describes the property conveyed as having a frontage of 34 feet on a certain street, instead of 42.35 feet, will be corrected in equity where the whole property is covered with a building with no intermediate wall to mark any division of the frontage, and it was understood and believed by the parties that the description of the premises covered the entire building.

2. A judgment creditor whose bill to subject the equitable interest of his debtors, as mortgagors, to the satisfaction of his judgment, describes the mortgaged property as described in the mortgage, is not thereby estopped to claim that the judgment debtors have the legal title to a strip of land which by mutual mistake was not included in the description of the premises.

3. The question of whether, under the Act of Congress of April 29, 1878, relating to the effect of unrecorded instruments as to creditors and subsequent purchasers, the equity of a grantee in a deed for the correction of a mistake in the description of the property, dependent upon parol evidence for its establishment, ought to be subordinated to a regularly acquired judgment lien, *considered* but not *decided*.

4. A judgment creditor whose knowledge, prior to the recovery of the judgment, of the premises mortgaged by his debtors, of the condition and uses of the building thereon, and of the improbability that any reasonable person would make a loan upon an undivided part of the building which gave value to the security, induced the belief that the mortgage embraced all the ground occupied by the building, is charged with notice of the equitable right of the mortgagee to have the misdescription in the mortgage corrected.

5. Knowledge of facts or circumstances reasonably sufficient to put a person of ordinary prudence upon inquiry, which if pursued with proper diligence would lead to the discovery of the actual condition of the title to real property, is equivalent to direct and certain knowledge.

No. 883. Submitted May 12, 1899. Decided June 19, 1899.

HEARING on appeal by the defendant from a decree in equity correcting a misdescription of certain premises contained in a mortgage and enjoining a judgment creditor of

the mortgagors from selling the property under execution.
*Affirmed.*

The COURT in its opinion stated the case as follows:

· This is an appeal from a decree correcting the description of certain premises contained in a mortgage, and enjoining the sale of the part of the lot embraced in said correction, under an execution against the mortgagors.

The following is a brief history of the facts upon which the decree rests, concerning which there is no controversy, and of the proceedings culminating in that decree.

December 1, 1896, John R. Lang and William H. A. Lang obtained a loan of $12,000 from the appellee, Herbert Bryant, a resident of Alexandria, Virginia, for which they executed a note bearing interest at the rate of 6 per cent. per annum payable semi-annually.

To secure said note they, joined by their wives, conveyed to William H. Saunders and Julian T. Burke, trustees, "the following described land and premises, situate in that part of the city of Washington, formerly Georgetown, in the District of Columbia, known and distinguished as and being part of Lot numbered 47 in old Georgetown, situate in the square formerly designated as Square numbered 30 in said Georgetown and now known as Square numbered 1200 in the city of Washington, and described as follows, viz.: Beginning for the same at a point on the west line of High street, distant 30 feet southerly from the south line of Bridge street, and running thence southerly along High street 120 feet; thence westerly 175 feet parallel with Bridge street; thence northerly 60 feet parallel with High street; thence easterly 95 feet, parallel with Bridge street; thence northerly parallel with High street 90 feet to Bridge street; thence easterly 34 feet along Bridge street; thence southerly parallel with High street 30 feet; thence easterly parallel with Bridge street 46 feet to the place of beginning, together with all and singular, the improvements, ways, easements, rights,

privileges and appurtenances to the same belonging or in any wise appertaining," etc.

This instrument, properly acknowledged by the grantors, was filed for record in the District on December 3, 1896.

The premises had been occupied by a building, for many years known as Lang's Hotel. The grantors in the deed had come into possession under the will of their grandmother, Eleanor Lang, and were at the time of the said loan carrying on the business of said Lang's Hotel.

On October 9, 1894, the said Lang brothers had conveyed the premises, by the same description, to Charles C. Glover and James M. Johnston in trust to secure Arthur Brice in the sum of $9,000. This instrument had been promptly recorded. Its lien was discharged with the proceeds of the loan by Bryant. The Langs were permitted to retain possession subject to the observance of the conditions respecting the payment of the principal and accruing interest of the loan.

February 15, 1897, the appellant, George W. Manogue, recovered a judgment in the Supreme Court of the District of Columbia against the said Langs for the sum of $412, with interest and costs. Execution issued thereon was returned "*nulla bona,*" February 16, 1897. February 17, 1897, the said Manogue filed a bill to enforce said judgment against the lands of said Langs, describing the same precisely as described in the trust deed to secure Brice and Bryant as aforesaid. The parties in both trust deeds, as trustees and beneficiaries, were made defendants, and asked to be required to render a statement of the amounts due them. A decree for sale, subject to said liens, was prayed to satisfy said judgment.

The Brice lien was shown to have been paid, and there was no contestation of the validity of the Bryant trust deed. Whilst that bill was depending, the Langs failed to pay interest as stipulated, and under the provisions of the trust deed the trustees became empowered to sell the premises.

On December 10, 1897, they joined Bryant in a petition filed in said cause alleging the default aforesaid and praying for leave to advertise and sell the said premises. A decree was passed December 15, 1897, permitting the sale as prayed and directing the surplus proceeds thereof, if any, to be brought into court.

The premises were sold under this permission, as a whole, on February 1, 1898, and were bid in by Bryant for the sum of $13,400. This was something less than the amount of the indebtedness with interest and charges.

February 3, 1898, Manogue filed a petition to set aside the sale because of inadequacy of the price, and prayed a resale in parcels, whereby a better price might be secured. He alleged that the property " has a front of 34 feet on M street, formerly Bridge street, and 120 feet on Thirty-second street, formerly High street; that the front on said M street is improved by a large building which has heretofore been used for hotel purposes, and that the front on Thirty-second street is improved by two dwellings, a stable, leaving on said front unimproved ground which is susceptible of convenient subdivision into six separate parcels."

February 10, 1898, the petition was granted and the trustees were ordered to resell in parcels, and afterwards in one piece, provided a higher price could be obtained by the latter mode than the aggregate of offers for the parcels. The property was, under this order, offered in parcels and finally sold in one piece to Bryant, who was the highest bidder, for the sum of $13,710, on May 17, 1898. There is nothing in the record to show, but the bill herein alleges, confirmation of said sale in June, 1898.

In obtaining the loan the Langs represented the lot as occupying all the space occupied by the hotel between the lot of Dunlop on one side and the fire-engine house on the other, and the value of the whole building was estimated and considered in granting the loan. It appeared, for the first time, on the division of the lot into parcels for sale as

aforesaid, that the hotel fronted 42.35 feet on M or Bridge street instead of 34 feet as set out in the description in the trust deed.

It appears that the strip of 8.35 feet had belonged to the city of Georgetown, and by virtue of some arrangements, not accounted for in the record, the Lang Hotel had been built over the same upon an arch and joined to the wall of the town hall.

This town hall has since been converted into a fire-engine house. A tunnel about 90 feet long was thus made under the second story of the hotel by means of this arch. Above the arch there was no wall marking a division of the hotel along the division line of said strip and the Lang lot proper. In 1863, Mrs. Eleanor Lang purchased the strip from the city authorities, but under a trust deed to secure the purchase money it was reconveyed to the city. It does not appear what title her grandsons had in said strip, and it is alleged in the answer of Manogue to the appellee's bill that they and those through whom they claimed acquired title by adverse possession. The tunnel was closed by them or their said grandmother, without apparent objection of the city authorities, and made a part of the hotel building also. When Bryant made his loan, this room, so made on the ground floor, was occupied as a barber shop, and its rental was considered in estimating the value of the security therefor.

Manogue was a grocer in Georgetown and sold goods to the Langs. He was familiar with the location and character of the construction of the building.

It is conceded that he believed the whole lot covered by the building belonged to the Langs and was included in the deed of trust. He did not know that the frontage exceeded thirty-four feet on M or Bridge street, and had no idea of the existence of the strip of 8.35 feet in excess. It was in this belief that he filed his bill aforesaid to subject the whole of the premises to his judgment, and in so doing followed the description contained in said trust deed.

ₒ After the discovery of the fact that the call in the description of frontage of thirty-four feet on M street left this strip unaccounted for, he caused an execution to be issued on his judgment and levied thereon. Bryant then filed this bill against the Langs and Manogue and Aulick Palmer, Marshal of the District, to correct the description in the trust deed, and to forever enjoin the sale under execution in favor of Manogue.

The preliminary injunction was granted. The Langs made no answer, and on final hearing a decree was passed correcting the description as prayed, and perpetuating the injunction.

From this decree Manogue alone has appealed.

*Messrs. Padgett & Forrest* for the appellant:

1. The deed of trust did not convey the land in dispute, but only the land specifically described in said deed; and up to the time of the filing of the bill for reformation the appellee was conclusively bound by the description in the deed as against both the rights of the grantors and of the appellant. The deed expresses the complete agreement of the parties, and even as between them the law conclusively presumes that no other property was intended to be conveyed by said deed. *Jones* v. *Johnston,* 18 How. 150; *Lowndes* v. *Huntington,* 153 U. S. 1; *Parker* v. *Kane,* 63 U. S. 1; *Alabama* v. *Montague,* 117 U. S. 602; *Chinoweth* v. *Haskell,* 3 Pet. 92. As against this appellant parol evidence is not admissible to show that the land in dispute was agreed and intended to be incorporated in the deed of trust, and was omitted therefrom by mistake. *De Witt* v. *Berry,* 134 U. S. 240; *Sprigg* v. *Bank,* 14 Pet. 201; *Johnson* v. *Railway Co.,* 141 U. S. 602; *Richardson* v. *Hardwick,* 106 U. S. 672; *Steamboat Co.* v. *Steamboat Co.,* 109 U. S. 672; *Seitz* v. *Brewers Co.,* 141 U. S. 510; *Willard* v. *Tayloe,* 75 U. S. 557; *Forsythe* v. *Kimball,* 91 U. S. 291; *Insurance Co.* v. *Mowry,* 96 U. S. 544; *Prentice* v. *Stearns,* 113 U. S. 435; *Jones*

v. *Johnson*, 18 How. 150. By the terms of the description contained in the deed of trust the appellee is estopped from claiming that the land in dispute was agreed to be included in said deed.

2. Although, as between the Langs and the appellee, the deed of trust might be reformed in this proceeding and parol evidence admitted to prove the real agreement between the parties, yet as against the lien acquired by the judgment of the appellant such evidence can not be admitted and the deed reformed so as to deprive him of his lien upon the land in dispute. *New Orleans Co.* v. *Montgomery*, 95 U. S. 16; *Ivison* v. *Hutton*, 98 U. S. 79; *Walden* v. *Skinner*, 101 U. S. 577. The effect of the decree below was to ratify the verbal agreement between the appellee and the Langs to the prejudice of the rights of this appellant. This was in violation of the law. *Johnston* v. *Jones*, 1 Black, 209.

3. At the time the appellant obtained his judgment and execution issued and levy was made on the land in dispute, the legal title to said land was in the Langs, and no bill to reform said deed and incorporate therein the terms of the alleged verbal agreement had been filed; and the appellant's judgment became a lien on said land superior to any claim or right which might have existed in the appellee by reason of said verbal agreement. This results by reason of the general principle of equity, as well as because of the recording laws. A creditor acquires a lien upon the lands of his debtor by and from the time of the rendition of a judgment, and it is the very nature and essence of a lien that no matter into whose hands the property goes it passes *cum onere*. *Burton* v. *Smith*, 13 Pet. 464; *Adler* v. *Fenton*, 24 How. 407; *Fogg* v. *Blair*, 133 U. S. 534; *Tayloe* v. *Lessee*, 5 Pet. 358; *Morsell* v. *Bank*, 91 U. S. 357; *Trust Co.* v. *Earle*, 110 U. S. 710. This lien was created by operation of law and not by the voluntary act of the Langs, and affected all the property to which they held the legal title, irrespective of the fact that the appellant had no knowledge that there

was such property in existence. *Stout* v. *Lye*, 103 U. S. 66.

4. The Act of Congress of April 27, 1898, relating to this District, provides that deeds of trust shall take effect and be valid as to creditors, and as to subsequent purchasers for valuable consideration without notice, from the time when such deed of trust shall be delivered to the recorder. of deeds for record, and from that time only. As at the date of appellant's judgment there was no deed of trust of record affecting the land in dispute and no instrument of record showing the terms of the alleged verbal agreement between the appellee and the Langs, and as the appellee had no notice of the alleged verbal agreement, the rights of the appellant under his judgment are prior and superior to the rights of the appellee under the deed of trust described in these proceedings and the said verbal agreement and must prevail. *Bank* v. *Hitz*, 1 Mack. 111; *Hitz* v. *Bank*, 111 U. S. 722; *Stevenson* v. *Railway Co.*, 105 U. S. 703; *Parmelee* v. *Simpson*, 72 U. S. 81; *Williams* v. *Jackson*, 107 U. S. 478.

5. The appellant is not estopped from asserting his rights under his judgment lien because in a creditor's bill filed by him against the Langs to subject their equitable interest in the land described in the deed of trust he alleged that, " as he is informed and believes, the said defendants are not the owners or possessors of any property in this District save and excepting the interest that they have in the property " described in said deed of trust. The whole meaning of this was that the appellant had no personal knowledge of the fact stated, but was informed that such was the fact and believed it. No case can be found where a man was ever estopped by such an allegation. See *Henshaw* v. *Bissell*, 18 Wall. 255 ; *Steel* v. *Refining Co.*, 106 U. S. 447.

*Mr. Francis L. Smith* and *Mr. Morgan H. Beach* for the appellee:

1. The whole property was offered as security when the loan was sought, and it was intended by all parties that the

deed of trust should embrace and contain the whole prop-
erty, and it was likewise understood by all parties to the
transaction when the trust deed was executed that it did, as
was their intention, include the whole of the property.

The well-settled rule that the grant of a house carries with
it the title to all the land under the house which the grantor
owns extends to all the land owned or occupied by the house
itself. *Sherman* v. *Williams*, 113 Mass. 484, citing *Blake* v.
*Clark*, 6 Greenl. 436; 4 Am. & Eng. Encyc. L. (2d Ed.) 997.

The deed under consideration does not employ the word
"house," but does use terms and expressions which, con-
strued alone or in the light of the object and intent of the
parties, may well be interpreted to be the equivalent of
"house," or indeed to possess a broader signification. The
land as designated by metes and bounds is granted, " together
with all and singular the improvements, ways, easements,
rights, privileges, and appurtenances to the same belonging
or in anywise appertaining, and all the estate, right, title,
interest, and claim, either at law or in equity or otherwise
however, of the parties of the first part of, in, to, or out of
the said land and premises." No elastic rule of construc-
tion seems necessary to make this description include and
embrace the strip of land in dispute. By the well established
rule of construction, every word shall be presumed to have
been used for some purpose, and shall have some force and
effect, if it can. *Salisbury* v. *Andrews*, 19 Pick. 253; *Ammi-
down* v. *Brown*, 8 Allen, 293.

All the estate, right, title, interest, and claim whatsoever,
whether at law or in equity, of, in, to, or out of the land and
premises, would seem sufficient to carry the hotel and all
land under it.

2. If the court deems the deed insufficient to embrace and
grant the land in dispute, then there is presented the second
question for the consideration and judgment of the court, as
to the priority between the equity of the appellee and the
judgment of the appellant. That there was a promise to

convey the disputed land as a security for appellee's benefit is not denied, and likewise that the failure to do so arose from a mutual mistake. This constitutes the equitable lien of appellee, carrying with it the right to have the deed of trust reformed so as to embrace the strip of land in question. Appellant does not deny this, but claims that the lien of his judgment is prior and superior to appellee's equity. In such a controversy the equity has generally and universally been held superior and prior to the judgment, except in those jurisdictions where positive statutory enactments have declared and prescribed a different rule. This arises from the inherent justice of the situation as well as the nature of the respective claims of the parties. The equity is a lien' and charge upon the specific and identical property, while the judgment is not a specific lien, but only a general lien on the defendant's lands. It attaches to the actual, not the apparent interest of the defendant. *Yarnell* v. *Brown*, 62 Am. S. Rep. 384, note; *Filley* v. *Duncan*, 93 Am. Dec. 337, 346, 355, note; Freeman on Judgments, Secs. 357, 358, 359, and cases in notes. An examination of the statute, in force in this jurisdiction (act of April 29, 1878) will show that it does not declare affirmatively, by implication or in any other way, that a judgment shall have priority over an equity springing from and growing out of a parol contract, as in this case, but leaves the case for the application of the general and established principles of justice.

The statute clearly refers to contracts in writing, instruments which are physically capable of record; and it can not refer to parol contracts which are, when fully performed on the one side, enforceable in equity and regarded in that court of conscience as valid and effectual as those evidenced by the most solemn instruments of writing.

As we have already seen, in each case the equity springing from a parol contract, which is incapable of recordation, is prior, superior, and paramount to the judgment. Illustrations of the application of the rule will be found in 2

Pom. Eq. Jur., Secs. 853, 856, 866, 867, and cases in note; Kerr on Fraud and Mistake, 419, 420, 421; *White* v. *Wilson*, 6 Black. 448; *Butler* v. *Barnes*, 12 L. R. A. 273; 15 A. & E. Encyl. of Law, 658; *Blankenship* v. *Douglass*, 26 Texas, 225; *In re Howe*, 19 Am. Dec. 395; *Briscoe* v. *Bronaugh*, 46 Am. Dec. 113; *Fask* v. *Rovesies*, 32 Ala. 451; Black on Judgments, Vol. 1, Sec. 445; *Floyd* v. *Harding*, 28 Grat. 401; *Phillips* v. *Roquemore*, 96 Ga. 719; *Martin* v. *Nixon*, 92 Mo. 26; Freeman on Judgments, Sec. 359 and cases cited. Judgment creditors are not protected against trusts of which they have no notice, or allowed in equity to hold against the *cestui que trust*. *Shryock* v. *Waggoner*, 28 Pa. St. 430.

3. The appellee has an easement for that portion of his building over and upon the disputed strip of land. The owner of two estates or parcels of land, one of which is subject to an apparent burden or servitude in favor of the other, upon granting one of the parcels will retain the other subject to the easement, or entitled to it, according as the estate retained is servient or dominant. The same principle applies if the estate has constituted one parcel in the hands of the grantor. Upon his grant of a part thereof to another, the easement from necessity springs into existence in favor of or against the grantee, as the situation demands. *Jordan* v. *Otis*, 38 Me. 429; *Adams* v. *Marshall*, 138 Mass. 228; *Henry* v. *Kock*, 80 Ky. 391; *Barry* v. *Edlavitch*, 33 L. R. A. 296; *Church* v. *Dobbins*, 153 Pa. St. 294.

4. Manogue having had the benefit of a sale, made at his suit against Bryant, on the sole ground that the deed of trust covered all of the Langs' property, and having had that sale rescinded on the express ground that the hotel should have been offered separately, as an hotel, cannot now be heard to say that the hotel was not covered by the deed of trust. 2 Pom. Eq. Jur., Secs. 802, 803.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. As between Bryant and the Lang brothers, the allegations of the bill and the proof in their support are sufficient

to sustain the decree correcting the description in the deed of trust by extending the front line of the lot to the western wall of the hotel building and embracing the strip in controversy. There was nothing in the record title of the Langs to indicate the existence of this strip. The failure to include it expressly could only be discovered by actual survey or measurement, and there was nothing to suggest the need or importance of this. The hotel building covered it all without an intermediate wall to mark any division of the frontage. To cut off the strip would not only force the construction of a new western wall for the hotel, but would seriously, if not irreparably, impair the value of the remainder of the building.

When the Brice loan was made, his representatives understood and believed that the description of the premises covered the entire building. Bryant, likewise, acted under the same belief. And it is wholly unreasonable to believe that he would knowingly have lent his money upon premises covered in part only by the building. It is plain, and has been conceded on the argument, that Manogue himself understood that the whole of the ground occupied by the hotel building was included in the mortgage.

This equitable right, so well established, is clearly superior to the equity of the judgment creditor, unless its enforcement is precluded by the operation of the statute which will be hereafter considered. *Brown* v. *Pierce,* 7 Wall. 205; *Hume* v. *Riggs,* 12 App. D. C. 355, 367, and authorities cited.

2. As against Manogue, the decree cannot be sustained on the ground that he is estopped by the allegations of the creditor's bill, with which this litigation began, to claim the existence of a legal title in the Langs to the strip in controversy subject to execution on his judgment as a lien taking priority over Bryant's equity.

That judgment became a lien upon all lands owned by the defendants therein, regardless of his knowledge or want of knowledge of such ownership. Believing, as he evidently

did in good faith, that the whole of the land covered by the hotel was included in the description of the premises as recited in the Bryant and Brice trust deeds, he filed the bill to subject the equitable estate of the mortgagors to the satisfaction of his judgment. Bryant was not misled to his prejudice by any allegation of the bill. And it is clearly not a case where Manogue was put to his election between inconsistent remedies in such a way as that, having elected, he must remain bound thereby.

3. The Act of Congress, approved April 29, 1878, relating to the effect of unrecorded instruments as to creditors and subsequent purchasers, reads as follows:

"All deeds, deeds of trust, mortgages, conveyances, covenants, agreements, or any instrument of writing which by law is entitled to be recorded in the office of the recorder of deeds, shall take effect and be valid, as to creditors and as to subsequent purchasers for valuable consideration without notice, from the time when such deed, deed of trust, mortgage, conveyance, covenant, agreement, or instrument in writing shall, after having been acknowledged, proved or certified, as the case may be, be delivered to the recorder of deeds for record, and from that time only."

It is contended on behalf of the appellee, in support of the decree, that this act does not apply to his claim of a prior equitable lien upon the strip of land in controversy, because founded in an equity for the correction of the trust deed, dependent upon parol evidence for its establishment, and therefore incapable of entry upon record for his protection.

In a case arising under this statute, where, apparently, the judgment creditor had not been put upon notice, by record or otherwise, of the equity of the mortgagee for correction or reformation, the same contention was denied by the former appellate court of this District. *Ruppert* v. *Haske*, 5 Mackey, 262.

We see no reason to depart from that decision. If an

15 Ct. App.—18

unrecorded conveyance, the description in which is perfect, must be declared invalid under the statute, as against the subsequently acquired rights of purchasers in good faith, and of creditors, then, for as strong a reason, a mere equity arising out of a mistake of description in a recorded instrument ought to be subordinated to the regularly acquired lien of a judgment against the grantor therein. *Wilcox* v. *Leominster Nat. Bank,* 43 Minn. 541; *Nugent* v. *Pnebatsch,* 61 Miss. 402; *N. O. Canal & B. Co.* v. *Montgomery,* 95 U. S. 16, 18. In the case last cited, the controversy, it is true, was between a prior and a subsequent mortgagee; but that would seem to be immaterial. The purpose of the statute is to protect judgment creditors as well as purchasers against claims of which they have no notice.

The case chiefly relied on to support the contention is that of *Floyd* v. *Harding,* 28 Gratt. 401. In that case Leftwich sold land to Turnbull, received the whole of the purchase money, and put Turnbull in possession, but made him no conveyance at the time. He subsequently made the conveyance, but before its execution Harding recovered a judgment against him and docketed the same in the manner required by law to secure a lien. As between Harding and the grantee of Turnbull, it was held that the statute did not apply to an equitable title of this character. The reasoning of the court is not convincing, and the conclusion would be more satisfactory had it been based upon the ground that Turnbull's actual, notorious, and exclusive possession was sufficient notice of his title within the spirit of the statute, as was done in a like case by the Supreme Court of Texas under a statute copied substantially from that of Virginia. *Barnett* v. *Vincent,* 69 Tex. 685.

It may be remarked also that the present case is not one of an equity or trust imposed or resulting by construction of law out of a transaction in which the beneficial claimant has not, and could not have exercised any control. Some such equities have been regarded as superior to judgment

liens under statutes substantially like, and even more strict in expression, than the one under present consideration. *Blankenship* v. *Douglas*, 26 Tex. 225; *Calvert* v. *Roche*, 59 Tex. 463; *Parker* v. *Coop*, 60 Tex. 111, 117; *Miss. Valley RR. Co.* v. *Chicago, etc., RR. Co.*, 58 Miss. 846, 854.

But the question whether any such equity is within the scope of our statute is not involved in this case and will not be passed upon.

4. If the decree in this case can be upheld at all, it must be upon the ground of knowledge by Manogue of the equity of Bryant before the recovery of his judgment and the attachment of its lien. Subsequent notice, actual or constructive, would clearly be of no avail.

Statutes of the same general nature as that governing in this jurisdiction prevail in most if not all of the States of the Union, and very many decisions have been made in cases arising under them. "In a large number of the States," says Mr. Pomeroy, "if a judgment creditor has notice of a prior unrecorded mortgage, or other outstanding equitable lien upon or interest in the land of his judgment debtor, at the time when he recovers the judgment, the lien arising from the docket of his judgment is postponed to such prior encumbrance or equity. In a few of the States, however, the statutory language is regarded as so peremptory, and the necessity of recording so complete, that even notice of an unrecorded mortgage or other subsisting equity, given to the creditor before the recovery and docketing of his judgment, is held not to affect the priority of the lien acquired by the subsequent docketed judgment." 2 Pom. Eq., Sec. 723.

Many cases are cited in support of this statement, and many more might be added, but they are too numerous for review. Our examination of them leads us to endorse the conclusion stated in *Lamberton* v. *National Bank of Winona*, 24 Minn. 281, 287. The statute of Minnesota made an unrecorded deed void as against any subsequent purchaser in

good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded, or against any attachment levied thereon, or any judgment lawfully obtained at the suit of any party against the person in whose name the title appears of record, prior to the recording of such conveyance. The grantee was in actual possession under an unrecorded deed when the judgment was regularly obtained against his grantor. The court admitted that, under a strict construction, the letter of the statute would avoid the unrecorded deed as against the judgment creditor, notwithstanding the notice given by the possession under it, but adopted a liberal interpretation in accord with what it conceived to be the true intent of the legislature, and upheld the right of the grantee in possession under the unrecorded deed. After stating the statutes of many of the States, and the decisions giving them interpretation, it was said:

" From the almost uniform current of decisions we gather these rules : That the general intent of the statutes of registry is to protect innocent persons against prejudice from secret conveyances, by providing means through which they can know the condition of titles ; that where they acquire such knowledge by means other than registry, they do not stand in need of such protection, and do not, as a general rule, come within the purview of the statutes ; and that the statutes will be so construed unless their terms exclude such construction." See, also, *Lebanon Sav. Bank* v. *Hollenbeck,* 29 Minn. 322 ; *United States* v. *Howgate,* 2 Mackey, 408, 416 ; *Duke* v. *Clark,* 58 Miss. 465, 475 ; *Walker* v. *Ellidge,* 65 Ala. 51, 57 ; *Grace* v. *Wade,* 45 Tex. 522, 527 ; *Overstreet* v. *Manning,* 67 Tex. 657, 663 ; *Stevenson* v. *Texas RR. Co.,* 105 U. S. 703 ; *Columbus Buggy Co.* v. *Graves,* 108 Ill. 459, 462 ; *Noyes* v. *Hall,* 97 U. S. 34, 37 ; *Massey* v. *Hubbard,* 18 Fla. 688, 690 ; *Swan* v. *Moore,* 14 La. Ann. 883, 886.

There is nothing in the terms of our statute materially different from those referred to above, and the same was

assumed to be its construction by Mr. Justice Miller, who delivered the opinion of the Supreme Court of the United States in the only case involving any point under that statute, that has gone to that tribunal. *Hitz* v. *Nat. Met. Bank*, 111 U. S. 722, 728.

The knowledge of facts or circumstances reasonably sufficient to put a person of ordinary prudence upon inquiry which, if pursued with proper diligence, would lead to the discovery of the actual condition of the title, is equivalent to knowledge direct and certain.

Now, if in this case there were inaccuracies or conflicts in the terms of the description, apparent upon the face of the record, which the judgment' creditor's knowledge of the property and its surrounding conditions would enable him to interpret and readily ascertain the meaning intended by the parties, there would be no difficulty in reaching a conclusion unfavorable to him. *Carter* v. *Hawkins*, 62 Tex. 393, 396 ; *Erickson* v. *Rafferty*, 79 Ill. 209.

Here, however, there is no conflict in the recitals, and the error in the call for frontage upon M street is not apparent upon the face of the record. Nor, on the other hand, is it a case of actual possession by a vendee or mortgagee of the whole of the premises which, of itself, would constitute notice.

But notwithstanding the absence of these conditions, the peculiar circumstances of the case are, in our opinion, sufficient to constitute notice to the judgment creditor, before the rendition of his judgment, of the equitable rights of the mortgagee.

His knowledge of the premises, of the condition and uses of the building, and his unavoidable apprehension of the improbability that any reasonable person would make a loan upon an undivided and inseparable part of the building which gave value to the security, led him to believe, as he clearly and confessedly did believe, that the deed of trust embraced, and was intended by the parties to embrace, all

of the ground occupied by the building. Had he, at the time of commencing his suit against the Langs, and with a view to ascertain the ownership of unencumbered land by them, actually measured the M street front and found the unembraced strip, the conditions above mentioned would inevitably have suggested to him the reasonable probability of the mutual mistake of the parties in describing that frontage as thirty-four feet instead of forty-two and thirty-five one hundredths feet in length. Inquiry of the parties would have led to direct information of the fact.

The decree will be affirmed, with costs.          *Affirmed.*