COMMERCIAL BANK OF AUGUSTA v. SANDFORD et al.

(Circuit Court, D. South Carolina. January 12, 1900.)

1. TAXATION—SALE UNDER TAX WARRANT—VALIDITY.
   Under the statute of South Carolina (Acts 1887; 19 St. at Large, p. 884), providing that a sheriff having a tax warrant for collection shall seize and sell so much of the property of the delinquent taxpayer as may be necessary to raise the sum of money therein named, and charges thereon, the limitation is mandatory, and a sale of a tract of land worth $2,500, and readily capable of division, to satisfy a tax warrant calling for only about $30, is unauthorized, and voidable by the landowner.

2. EQUITY PLEADING—MULTIFARIOUSNESS—BILL FOR FORECLOSURE OF MORTGAGE.
   A bill to foreclose a mortgage on real estate is not multifarious because it joins as defendants parties claiming title to the land under a sale upon a tax warrant against the mortgagor, which sale was made after the execution of the mortgage, and, if valid, would defeat the lien thereof, and seeks to have such sale set aside as illegal.

3. PARTIES—SUIT TO SET ASIDE TAX SALE.
   In a suit against the purchasers of land at a tax sale, to set aside such sale on the ground that the action of the sheriff who made it was illegal, such sheriff is a proper party defendant.

In Equity.

Jos. R. Lamar, for complainant.

D. S. Henderson and Wm. H. Townsend, for defendants.

SIMONTON, Circuit Judge.   This bill is filed for the foreclosure of a mortgage executed on May 7, 1896, by Mary E. Sandford, a citizen and resident of the state of Tennessee, to the Commercial Bank of Augusta.   The principal of the bond secured by the mortgage is $2,500.   The land embraced in the mortgage is situate in Barnwell county, in the state of South Carolina, containing 202 acres. The mortgage was duly recorded.   The defendants in the cause are the said Mary E. Sandford, the mortgagor, H. S. Mellichamp, Mrs. E. R. Easterling, and Mrs. Julia B. Easterling, who hold and claim possession of this land under a tax title executed to them on August 6, 1898, by Frank H. Creech, sheriff of Barnwell county; and this sheriff is also made a defendant.   Mrs. Sandford filed her answer, admitting the execution of the bond and mortgage, the amount claimed to be due and unpaid thereon, and the right of complainant to foreclose.   H. S. Mellichamp and the Mesdames Easterling join in demurrer to the bill.   This demurrer is for these causes:   (1) That the complainant hath not, in and by said bill, made or stated such a cause as doth or ought to entitle it to any such relief as is thereby sought and prayed for from or against these defendants; (2) that it appears from said bill that the same is exhibited against these defendants and several other persons therein named as defendants thereto for distinct matters and causes, in several whereof, as appears by said bill, these defendants are in no wise interested or concerned, and that the bill is altogether multifarious.

The defendant Creech files his demurrer, the first and third grounds whereof are the same as those in the demurrer of the other defendants; and the second ground that it does not appear from the bill of complaint that this defendant has any interest in the subject-matter of this suit.   These grounds will be considered in their order.

As the demurrers admit all the facts stated in the bill, these will be set out.   The bill alleges that the defendants Mellichamp and the Mesdames Easterling are in possession of the tract of land, claiming under a tax title executed to them by their co-defendant F. H. Creech, sheriff of Barnwell county, on August 6, 1898; that said tax title is null and void, having been given and obtained without warrant of law and under circumstances not sustained by law; that the warrant on which the tax title is based was issued by the treasurer of the county for $22.65, with $8.45 costs, the warrant containing in part taxes issued for the school district within which this tract lay, which school taxes were improperly and illegally levied, there being no petition of freeholders therefor, as the law requires; that the statute in such case made and provided requires the sheriff, under the warrant, to seize and take possession of so much of the defaulting taxpayer's estate, real or personal, or both, as may be necessary to raise the sum of money therein named, and charges thereon, and, after due advertisement, to sell the same; that under said war-

rant so illegally issued the said sheriff did not seize and take exclusive possession of so much of defaulting taxpayer's estate, nor did he personally take possession, or personally sell the same, but, on the contrary, an illegally appointed deputy went on the land, and took possession of all of it, and not of so much as was necessary to pay the tax, which ·could easily have been done, and the entire tract was sold by the illegally appointed deputy, not by the sheriff, and was purchased by said defendants for $85; that the levy so made was excessive, the said tract being easily divisible into two parts, which could have been easily· sold so as to bring the amount of the tax and charges, the whole land being worth at least $2,500; that· although the tract of land levied upon was easily divisible into two parts, which could have been easily sold ·to bring the amount of taxes and charges thereon, the whole tract was sold and purchased by the defendants for the sum of $85, its actual value being $2,500; that the levy and sale were made not by the sheriff, but by an illegally appointed deputy.

If these facts be true,—and for the occasion the demurrer admits them,—the levy and sale were illegal, and the defendants took nothing. In the case of Wilson v. Cantrell, 40 S. C. 114, 18 S. E. 517, the sheriff, acting under the same statute as the sheriff in this case· acted (Acts 1887; 19 St. at Large, p. 884), levied upon and sold the entire tract. This was sustained. It did not appear that the tract was divisible so as to be sold in parcels, and the conclusive fact was found by the circuit judge and the master that the levy was not excessive. In the case at bar it is stated in the bill and admitted by demurrer that the land could easily have been divided, and the parts easily sold to pay this tax; and, as to the excess of the levy, there can be no doubt when a tract of the value of $2,500 is sold for a tax of $22.65.

The rule is stated by Mr. Justice Field in French v. Edwards, 13 Wall. 511, 20 L. Ed. 703, as follows:

"There are undoubtedly many statutory requisitions intended for the guide of officers in the conduct of business devolved upon them, which do not limit their power or render its exercise in disregard of the requisitions ineffectual. Such, generally, are regulations designed to secure order, system, and dispatch in proceedings, and by a disregard of which the rights of parties interested cannot be injuriously affected. Provisions of this character are not usually regarded ·as mandatory, unless accompanied by negative words importing that the acts required shall not be done in any other manner or time than that designated. But when the requisitions prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be, and generally would be, injuriously affected, they are not directory, but mandatory. They must be followed, or the acts done will be invalid. The power of the officer in all such cases is limited by the manner and conditions prescribed for its exercise."

Cooley, Tax'n, p. 496, states this rule. He adds:

"And such a provision [that only so much of the land must be sold as would pay the tax] must be strictly obeyed. A sale of the whole, when less would pay the tax, would be such a fraud on the law as to render the sale voidable, at the option of the landowner, and the deed would be void on its face, if it showed the fact of such excessive sale."

But the question remains, can this be considered in this suit? or, in other .words, is. this bill multifarious? It is difficult, if not im-

possible, to define "multifariousness." There is not any positive, inflexible rule as to what, in the sense of a court of equity, constitutes "multifariousness," which is fatal to a suit on demurrer. Shields v. Thomas, 18 How. 253, 15 L. Ed. 368, approved in Harrison v. Perea, 168 U. S. 319, 18 Sup. Ct. 129, 42 L. Ed. 478. Story defines this term, "The improperly joining in one bill distinct and independent matters, and thereby confounding them." Story, Eq. Pl. § 271.

In Salvidge v. Hyde, 5 Madd. 146, we find this:

"If the object of the suit be single, but it happens that different persons have separate interests in distinct questions which arise out of that single object, it necessarily follows that such different persons must be brought before the court, in order that the suit may conclude the whole object."

See, also, Brown v. Deposit Co., 128 U. S. 403, 9 Sup. Ct. 127, 32 L. Ed. 468; Barcus v. Gates, 32 C. C. A. 337, 89 Fed. 791.

The complainant, and Mr. Mellichamp, with the two Mesdames Easterling, claim through and rely upon the title of Mrs. Sandford. The complainant sets up a mortgage lien; these defendants set up a sale under the prior tax lien. The question is as between these alleged liens. If the sale under the tax lien is good, the complainant's lien is defeated. It is not defeated if the sale be illegal. The complaint sets up no title; only a lien. The defendants claim under a prior lien, and must connect themselves with it in order to defeat the mortgage lien.

A suit to foreclose the mortgage, leaving this matter of sale under the tax lien open, would be futile, and lead to further litigation. Indeed, as it appears, but for this claim there need be no suit. These defendants do not claim adversely to Mrs. Sandford. They claim under her. They derive their title from her. If she never had any title, they have none. They get their title under a lien on her land. If she had parted with her title before the execution of this mortgage, either by her own voluntary act or by operation of an execution or a tax sale, then possibly they would not be proper or necessary parties to this suit. But, if she had made a conveyance or assignment after the date of the mortgage, the purchaser would have been a necessary party to the foreclosure of the mortgage. Story, Eq. Pl. §§ 193, 199, 201; Terrell v. Allison, 21 Wall. 289, 22 L. Ed. 634. In Stevenson v. Railway Co., 105 U. S. 703, 26 L. Ed. 1215, a bill in equity to foreclose a mortgage was sustained which tried the validity of a sale on execution against the mortgagor upon judgments recovered after the mortgage was made. These authorities are quoted in Hefner v. Insurance Co., 123 U. S. 755, 8 Sup. Ct. 337, 31 L. Ed. 309, as sustaining this doctrine. On principle, it was within the jurisdiction and authority of the court, upon a bill in equity for the foreclosure of the plaintiff's mortgage, to determine the validity or invalidity of a tax title, and the purchaser and holder of the tax title acquired after the date of the mortgage was a proper, if not a necessary, party to the bill.

The bill is not multifarious as to these three defendants. Can the demurrer of the sheriff be sustained? The sheriff may not be a necessary party, but he certainly is a proper party. The other defendants claim through his action, and complainant alleges that it was illegal.

Indeed, he is responsible for the irregularity and invalidity of the sale. The bill discloses no collusion, fraud, or improper conduct on the part of the other defendants. As their rights depend on the validity of the sheriff's discharge of his duty, they are entitled to his assistance in the defense of his action. In the note on "Parties" to Mitf. Eq. Pl. (6th Am. Ed., from 5th Lond. Ed.) p. 398, the rule is stated: "There is, however, another rule, that, when a defendant is interested in having another made a party defendant, the plaintiff is obliged to make him a party, so that the principal defendant may have his assistance in the defense." There is another consideration. If this sale be set aside, the defendants, who purchased and paid their money, they being without fault, are entitled to the return of what they paid. This must be made by the sheriff, who received it. That gives him an interest in the subject-matter of this suit. So he comes within the general rule, stated by the same authority, "that all interested in the subject-matter of a suit in equity, whether directly and immediately, or incidentally and remotely, are to be made parties, so that complete justice may be done between all parties interested in one suit"; quoting Crease v. Babcock, 10 Metc. (Mass.) 531. As was said by Lord Chancellor Talbot, and repeated by Chief Justice Marshall, "the court of equity in all cases delights to do complete justice, and not by halves." Hefner v. Insurance Co., supra. Let an order be taken overruling the demurrers, and giving leave to defendants, if they be so advised, to plead or answer under equity rule No. 34.