### NEWLIN v. WEAVER BROS., Inc.
#### No. 849.

Municipal Court of Appeals for the District of Columbia.

Argued Sept. 26, 1949.

Decided Nov. 16, 1949.
Rehearing Denied Dec. 14, 1949.

See 170 A.2d 61.

Herman Miller, Washington, D. C., for appellant.

Bernard I. Nordlinger, Washington, D. C., with whom Milton W. King, Wallace Luchs, Jr., and Ellis B. Miller, Washington, D. C., were on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

This is an appeal from a directed verdict in favor of a landlord awarding him possession of an apartment on the ground that the tenant had kept a dog, in violation of an agreement in a lease that he would not keep live animals or birds in the premises without the written consent of the landlord first had and obtained. It was stipulated that the tenant was in fact keeping a dog in the apartment. It was also stipulated that the dog was well behaved and that no evidence was to be offered to prove any complaints about it. The defense was that the agreement had been waived with respect to dogs in general and particularly regarding the dog owned by the tenant at the time suit was brought.

The tenant has been in possession of the apartment since 1938. He had one dog when he moved into the apartment and upon the death of that dog in 1945 he secured another "almost like the one that died," and the second dog has been kept in the apartment ever since. He offered to prove

that before renting the apartment he talked with Morris Silver, the owner, and told him he had a dog which was just as much a part of his family as any human and unless he could have a dog he did not want the apartment and that the owner agreed that he could have a dog. Objection to such proffered evidence was sustained.

A written lease was entered into in 1941 between the tenant and Weaver Bros., Inc., realtors, described in the lease as the landlord. It was this lease, which has been in effect ever since, which contained the agreement forbidding the keeping of animals without permission. It further contained a general clause to the effect that "no waiver of any breach of any condition or agreement contained herein shall be construed to be a waiver of that condition or agreement or of any subsequent breach thereof, or of this agreement."

The tenant testified that he had no conversation about the dog with anyone in the Weaver office when he signed the lease but that he talked about the dog with Mr. Silver before signing. The court sustained an objection to a recital of this conversation. The tenant further testified that a Mr. Middleton, maintenance manager for Weaver Bros., who notified him in January 1949 to dispose of the dog within 15 days, had visited the apartment several times previously and that the dog had been visible on those occasions; also that he had seen Mr. Middleton several times when the tenant was walking the dog. Mr. Middleton stated that he had been in the tenant's apartment several times during the past few years and that he might have seen the dog in the apartment but did not remember ever having seen it until shortly prior to giving notice that the dog would have to be removed. After receiving this notice the tenant paid rent in advance for February and March. Weaver Bros. accepted these two months' rent but returned a further payment tendered April 1 and later filed this suit.

The first error assigned is the rejection by the trial court of the proffered evidence that Mr. Silver, the owner of the building, had given consent in 1938 to the keeping of a dog and the further evidence as to the conversation between the tenant and Mr. Silver prior to the signing of the lease. We believe the first ruling was correct because the 1938 conversation was too remote to affect the lease made in 1941. As to the 1941 conversation, however, we believe the ruling of the trial court was erroneous. As has been often stated, oral testimony may not be used to vary the terms of a written lease, but it is admissible on the question of whether a covenant has been waived.[1] It will be noted, furthermore, that the covenant in the present case, unlike many others, did not absolutely prohibit the keeping of animals but provided only that they should not be kept without written permission. If permission to keep a dog was given in 1941 or subsequently, this would not be a waiver of the covenant but a compliance with it. It has been held many times that a provision requiring written permission may be waived on the theory of estoppel where permission is given orally, or some other act is done inconsistent with reliance upon the covenant. We do not agree with the landlord's argument that admission of testimony of a conversation with Mr. Silver would have had the effect of permitting a tenant to dispute his landlord's title. Even though Weaver Bros., Inc., was the technical landlord, we believe it was permissible to allow the tenant to show, if such was a fact, that the real estate firm was acting as agent for a disclosed principal and therefore would be bound by promises made or permission given by such principal. That would not amount to disputing the landlord's title. Here again we emphasize that the question involved was not merely one of waiver but of the giving of permission in accordance with the lease.[2] The landlord urges there was no showing that

1. Stewart v. Shannon & Luchs Co., D.C. Mun.App., 46 A.2d 863; Merritt v. Kay, 54 App.D.C. 152, 295 F. 973.

2. In this respect the instant case differs from Merritt v. Kay, supra, where there was involved only a question of waiver and where the owner was an undisclosed principal in the beginning.

Mr. Silver was still the owner in 1941 or that the 1941 conversation was had with the same Mr. Silver who owned the property in 1938. If the proffered evidence regarding Mr. Silver had been admitted, at least tentatively, all of these questions could have been disposed of with a background of knowledge by the trial court. Instead, the tenant was deprived of the opportunity of showing the circumstances surrounding his rental of the apartment, and the agreement as to the critical issue in the case. This we believe was error.

The tenant claims also that there was evidence of a waiver of the breach by the acceptance of rent with knowledge, and assigns as error the action of the trial court in directing a verdict for the landlord instead of submitting the question of waiver to the jury. We agree with this contention.[3] Aside from the conversations between the tenant and Mr. Silver, we believe there was sufficient evidence to go to the jury as to waiver by Weaver Bros. Not only was there evidence from which the jury could have concluded that the agent of the real estate firm knew of the presence of the dog for a long time, but there was the further undisputed evidence that after admittedly knowing that the second dog was in the apartment Weaver Bros. accepted two months' rent in advance. It is settled law in this jurisdiction that where a landlord accepts rent in advance with knowledge of a subletting in violation of a covenant against subletting such acceptance is a waiver of that breach and that the waiver continues in effect until there is another subletting.[4] The landlord, however, urges that the situation with respect to a dog is different from that involving a subletting on the theory that in the case of a subletting the subtenant obtains property rights whereas this is not true as to a dog. We do not believe, however, that consideration is controlling. As we said in Stewart v. Shannon & Luchs Co., supra, "we think keeping the same dog on the premises would no more constitute a continuing breach than a subletting to one tenant." [46 A.2d 864]. Without indulging in sentiment on the subject, we do not believe that keeping a particular dog to which a family may have become attached can be compared to failure to make repairs in violation of a covenant that they shall be made. Neither do we believe, as suggested by the landlord, that this case is analogous to one involving a covenant against the use of property for a particular purpose, or in a particular manner. We conclude there was sufficient evidence to require the submission of the question to the jury.

Reversed with instructions to award a new trial.

3. Stewart v. Shannon & Luchs Co., supra.

4. Merritt v. Kay, supra.