**ROSENTHAL v. J. LEO KOLB, Inc.**

No. 1350.

Municipal Court of Appeals for the District of Columbia.

Argued June 1, 1953.

Decided June 22, 1953.

J. H. Krug, Washington, D. C., for appellant.

Charles H. Quimby, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

J. Leo Kolb, Inc. sued Rosenthal for possession of an apartment, claiming that a monthly rental of $85 was unpaid. Rosenthal defended on the ground that the agreed rental was $75 per month, which he had tendered. The decision of the trial court was in favor of plaintiff and defendant brings this appeal.

The evidence was mostly documentary and was marked by little or no contradiction. In May, 1951 Rosenthal leased the apartment from one Godwin, at a rental of $95 per month. In July, 1951 Tocha became the owner of the property. The following month Rosenthal sued Tocha under the Rent Act, D.C.Code 1951, § 45–1601 et seq., for double the value of maid services and laundry withheld in violation of a minimum-service standard fixed by the Rent Administrator. Tocha and Rosenthal reached a compromise agreement which was reduced to writing on October 8, 1951, under which Rosenthal gave Tocha a complete release of all claims, agreed to dismiss his damage suit and agreed that Tocha was not to be required to furnish laundry or maid service in the future. The considerations moving to Rosenthal under the agreement were the payment of $119.76 for expenditures and attorney's fees and a reduction in rent expressed in these words: "The monthly rent for said premises, from and after the date of this Agreement, shall be reduced from Ninety-Five Dollars ($95.00) to Seventy-Five Dollars ($75.00), and shall not exceed Seventy-Five Dollars ($75.00) during the period in which the tenant remains in possession of said premises."

In the meantime on October 1, 1951, Tocha as landlord had voluntarily filed with

the Office of the Rent Administrator a petition asking reduction of the rent ceiling to $85 in consideration of the withdrawal of linen, maid and laundry services. On October 12, 1951 a rent examiner ordered that by reason of such reduction in service and facilities the maximum rent ceiling be reduced to $85 effective October 23, 1951. Defendant had notice of that proceeding but did not appear therein because he felt he was protected by the compromise agreement from which we have quoted above. On October 24, 1951, the Kolb office notified Rosenthal that the property had been placed under its management and submitted for his signature a new monthly rental agreement containing a provision for a rental of $75, the amount fixed in the compromise agreement. The rental agreement was signed by Kolb as landlord and Rosenthal as tenant and was dated October 24, 1951.

Seven months later, after Tocha had sold the building to new owners, Kolb by letter dated May 27, 1952 notified Rosenthal that effective July 1, 1952 his rent would be $92.34 in accordance with certain "general orders" of the Rent Administrator. Rosenthal protested that his rent had been fixed at $75 under his settlement agreement with Tocha and continued to pay that amount until January, 1952 when Kolb refused to accept less than $85. This litigation followed, with the result above-stated.

■ Was the tenant justified in insisting on his right to a reduced rent under the compromise agreement with the former owner, Tocha? As to this there would not be the slightest doubt if Tocha were still the landlord, for the law favors compromise of disputed claims,[1] and enforces rights created under compromise agreements.[2] These parties had formally contracted for a continuing rental of $75, and Tocha, as landlord, could demand no more than that. The $85 set by the Rent Administrator was a maximum ceiling which did not affect the lower amount agreed to by the parties.[3]

■ How does the compromise agreement affect the present landlord, Kolb? After the demand for higher rent there was an exchange of correspondence between Kolb and Rosenthal, virtually all of it self-serving. Rosenthal insisted in effect that the agreement meant what it said and that so long as he continued in possession he could not be called on to pay more than the settlement figure named in the compromise agreement. The witness Kolb admitted knowledge of the $75 per month agreement[4] but contended that he did not know the "entire context." It must be kept in mind that Kolb is here as landlord. And when Kolb became landlord it was as agent for Tocha, a principal known and disclosed; hence Kolb was bound by the promises contained in the agreement between Tocha and Rosenthal.[5]

■■ The foregoing may be considered dispositive of the appeal, at least as it affects the rights of Kolb. There was at the trial a brief and passing reference to "new owners"; but such owners were not parties to the proceeding. Against the possibility that they may be made parties (a matter we discuss at the close of this opinion) we repeat that Kolb had knowledge of an agreement for a $75 rental, and voluntarily entered into a new and direct written agreement with the tenant at the same rate. The new owners had, through Kolb, either knowledge or ready opportunity of knowledge that the Rosenthal apartment was rented not for the $85 maximum rent ceiling but for $75. Simple inquiry would have revealed that the agreement providing for such reduced rental was also made binding "upon the assigns, heirs and legatees of the parties." Hence it would be correct to say that they took the property subject to Rosenthal's vested rights in the compromise

1. Magruder v. National Metropolitan Bank, D.C.Mun.App., 40 A.2d 828.

2. Proctor v. Ward, D.C.Mun.App., 83 A.2d 281.

3. See Hildebrand v. Nee, D.C.Mun.App., 54 A.2d 640.

4. Kolb could hardly have done otherwise in view of the fact that the new and direct agreement with Rosenthal called for the same figure.

5. Newlin v. Weaver Bros., D.C.Mun.App., 69 A.2d 500.

agreement.[6] "The knowledge of facts or circumstances reasonably sufficient to put a person of ordinary prudence upon inquiry which, if pursued with proper diligence, would lead to the discovery of the actual condition of the title, is equivalent to knowledge direct and certain." [7]

We need discuss only briefly another matter, which arose after trial. On a motion to vacate finding defendant tendered evidence to the effect that Kolb had, after the trial and while the case was under advisement, written to the owners withdrawing from management of the property. He also produced a letter from the present owners, written after the decision of the trial court, notifying him that Kolb was no longer managing the property. In view of our decision on the basic questions above discussed and tenant being entitled to a decision on the merits, we need not discuss the motion at any length. If this appeal had resulted in an affirmance of the judgment entered in favor of Kolb, actual possession would undoubtedly have been yielded up to the owners. Since we are reversing and since our decision confirms tenant's right to a continuing $75 rental, (which amount he has repeatedly tendered) such right will prevail regardless of who appears as plaintiff.

Reversed, with instructions to enter judgment for Defendant.

6. In his brief appellant concedes that the agreement operates only while rent control is in force, and that when the Rent Act expires the provision for reduced rental will expire and the landlord can obtain possession.

7. Manogue v. Bryant, 15 App.D.C. 245, 261. See also Knowles v. Mosher, D.C. Mun.App., 45 A.2d 755, and cases there cited; Quick v. Paregol, D.C.Mun.App., 61 A.2d 407.